# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MAY SESSION, 1998

FILED

September 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9612-CC-00524 |
| | ) | |
| Appellee/Cross-Appellant, | ) | |
| | ) | |
| | ) | RUTHERFORD COUNTY |
| VS. | ) | |
| | ) | HON. J.S. DANIEL |
| FRANK KENNETH TALLEY, | ) | JUDGE |
| | ) | |
| Appellant/Cross-Appellee | ) | (Direct Appeal - Rape) |

FOR THE APPELLANT:

SCOTT DANIEL
401 W. Main St.
Murfreesboro, TN 37133-0960

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KAREN M. YACUZZO
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

BILL WHITESELL
District Attorney General

PAUL A. HOLCOMBE, III
Assistant District Attorney
Rutherford County Judicial Bldg.
Murfreesboro, TN 37130

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

The appellant, Frank Kenneth Talley, Jr., was convicted by a Rutherford County jury of three (3) counts of rape, a Class B felony. The trial court sentenced Appellant as a Range II Multiple Offender to concurrent sentences of thirteen (13) years for each offense. On appeal, Appellant raises several issues for our review:

(1) whether the indictment failed to set forth the essential elements of the crime because it does not aver a culpable mental state;

(2) whether the evidence was sufficient to establish Appellant's guilt beyond a reasonable doubt;

(3) whether the trial court properly denied the admission of evidence regarding the victim's psychological treatment;

(4) whether the trial court erred in allowing the prosecution to ask leading questions and thereby denied Appellant a fair trial;

(5) whether the court erred in allowing the state to introduce the medical report of the victim's emergency room visit and allowing such report to be passed to the jury;

(6) whether the trial court erred in admitting a photographic line-up;

(7) whether the trial court erred in ruling that the prosecution could cross-examine Appellant as to his prior conviction for the offense of assault with intent to rob, if Appellant chose to testify;

(8) whether the court erred in allowing the state to inform the jury that Appellant had provided a list of alibi witnesses;

(9) whether the court erred in overruling defense counsel's objection and allowing the prosecutor to state to the jury that what the victim told another person was hearsay; and

(10) whether the trial court denied Appellant a fair trial by allegedly biased rulings during closing argument which unfairly favored the prosecution.

The state also appeals, claiming that the trial court erred in sentencing Appellant. After a thorough review of the record before this Court, we affirm the judgment of the trial court.

## FACTS

On April 23, 1995, D.M.'s[1] car broke down in the parking lot of Kroger grocery store in Murfreesboro. A man, later identified as the appellant, approached D.M. and offered his assistance. After examining the vehicle, Appellant told D.M. that he needed to take a friend home, but would return with tools to fix the car.

While Appellant was gone, another man, Jerry Goodrich, stopped and offered his assistance with the malfunctioning vehicle. Appellant eventually returned, and he and Goodrich were able to repair D.M.'s car. Appellant offered to follow D.M. halfway home in case her vehicle stopped again. Instead, Appellant followed D.M. all of the way to her apartment.

When they arrived at D.M.'s home, Appellant asked if he could use her restroom. D.M. agreed. Upon entering the apartment, D.M. offered Appellant a beer in gratitude for his assistance in repairing her car. He took the beer, sipped it and went to the restroom. Appellant then walked into the kitchen, where D.M. was putting away groceries, and grabbed her around her neck from behind. As he dragged her into the bedroom, the victim asked what he was doing. Appellant replied, "[i]f you just be quiet and don't fight me, I won't hurt you." Appellant took D.M. into the bedroom, put her on the bed, and wrapped the covers around her head. The victim begged Appellant to stop and, although she did not see Appellant with a weapon, believed that Appellant might "blow [her] brains out."

---

[1] It is the policy of this Court not to reveal the names of victims of sex crimes.

Appellant again stated that he would not hurt her if she did not fight him. The victim begged Appellant to remove the covers from her head, and he eventually complied.

Appellant pulled off D.M.'s clothing and, over a period lasting approximately forty-five (45) minutes, penetrated her vaginally, forced her to perform oral sex on him, and then performed oral sex on her. However, Appellant did not ejaculate as a result of these acts. Appellant then apologized for his behavior and left the victim's home. Before he drove away, however, D.M. observed and wrote down the license plate number from the vehicle Appellant was driving.

Subsequently, D.M. called her son, Joshua, and informed him about the incident. Joshua called the law enforcement authorities, and when the police arrived at the victim's home, she gave them a description of Appellant as well as his license plate number. The victim was then taken to the emergency room.[2]

The police ran a check on the license plate number provided by D.M., and the vehicle was registered to Lizzie McGowen, the aunt of Appellant's wife. The officers went to Appellant's home and confronted him with the charges against him. Appellant's wife told the officers, "[Appellant] couldn't have done it. He was with me all day." Appellant also denied the allegations made by the victim.

The next morning, the victim identified Appellant from a photographic line-up. Appellant was arrested and gave a statement to police officers wherein he admitted assisting D.M. with her car the previous day, but denied following her to her home.

Authorities later recovered Appellant's fingerprints from a beer bottle found in the victim's home.

---

[2] No semen or other physical evidence was found as a result of the victim's physical examination at the hospital. However, the nurse who examined the victim observed red marks on the victim's forearms and left lower leg.

Appellant's wife, Belinda Talley, testified for the defense at trial. She stated that Appellant had been in her presence the entire day, with the exception of approximately forty-five (45) minutes to an hour when Appellant left his family to pick up food. The defense also presented the testimony of other family members, who testified as to Appellant's whereabouts during the day of April 23.

Appellant did not testify at trial.

At the conclusion of the proof, the jury convicted Appellant of three (3) counts of rape. The trial court sentenced Appellant as a Range II multiple offender to concurrent terms of thirteen (13) years for each offense. From his convictions and sentences, the Appellant and the State of Tennessee bring this appeal.

## SUFFICIENCY OF THE INDICTMENT

Appellant argues that his convictions are void because the indictment did not allege a culpable mental state. He claims that the indictment failed to set forth the essential elements of the offense; as a result, the trial court was deprived of jurisdiction, and his convictions for rape are void *ab initio*.

The indictment alleged that "on the 23rd day of April, 1995, . . . Frank Kenneth Talley, Jr., using force or coercion to accomplish this act, did unlawfully sexually penetrate . . . [D.M.], in violation of T.C.A. 39-13-503. . ." The language in the indictment is similar to that in the case of State v. Hill, 954 S.W.2d 725 (Tenn. 1997). In Hill, the Supreme Court was faced with an identical issue and held that:

> for offenses which neither expressly require nor plainly dispense with the requirement for a culpable mental state, an indictment

which fails to allege such mental state will be sufficient to support prosecution and conviction for that offense so long as

(1) the language of the indictment is sufficient to meet the constitutional requirements of notice to the accused of the charge against which the accused must defend, adequate basis for entry of a proper judgment, and protection from double jeopardy;

(2) the form of the indictment meets the requirements of Tenn. Code Ann. § 40-13-202; and

(3) the mental state can be logically inferred from the conduct alleged.

Id. at 726-727.

Under Tenn. Code Ann. § 39-13-503, the culpable mental state for the offense of rape is neither specifically stated nor plainly dispensed with. Thus, proof of "intent," "knowledge" or "recklessness" will suffice to establish the culpable mental state. Tenn. Code Ann. § 39-11-301(c).

The indictment in this case provides adequate notice of the charged offenses as well as a basis for entry of a proper judgment and protection against double jeopardy. Furthermore, the indictment complies with requirements stated in Tenn. Code Ann. § 40-13-202. Moreover, the mental state can be logically inferred from the conduct alleged. "Obviously, the act for which the defendant is indicted, 'unlawfully sexual penetrat[ing]' a person . . . is committable only if the principal actor's *mens rea* is intentional, knowing, or reckless." State v. Hill, 954 S.W.2d at 729.

The indictment in the present case clearly meets the requirements set out in Hill and is, therefore, valid. This issue is without merit.

**SUFFICIENCY OF THE EVIDENCE**

In his next issue, Appellant contends that the evidence is insufficient to support the jury's finding of guilt on three (3) counts of rape. Specifically, he asserts that the victim's testimony is incredible, and there is little evidence to corroborate her testimony. Furthermore, he claims that the state failed to present sufficient evidence of force or coercion.

**A.**

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id.

On appeal, the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); Tenn. R. App. P. 13(e). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those

drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

**B.**

Rape is defined as the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim" and "[f]orce or coercion is used to accomplish the act." Tenn. Code Ann. § 39-13-503(a)(1) (1991). Unlawful sexual penetration "means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of the victim's, the defendant's, or any other person's body . . ." Tenn. Code Ann. § 39-13-501(7) (1991). "Force" means "compulsion by the use of physical power or violence," and "coercion" is defined as the "threat of kidnapping, extortion, force, or violence to be performed immediately or in the future." Tenn. Code Ann. §§ 39-11-106(a)(12), 39-13-501(1) (1991).

The victim testified that Appellant grabbed her around her neck from behind and dragged her into the bedroom. When she asked what he was doing, Appellant replied, "[i]f you just be quiet and don't fight me, I won't hurt you." The victim testified that she was frightened and begged Appellant to stop. Appellant pulled off the victim's clothing and penetrated her vaginally, forced her to perform oral sex on him, and then performed oral sex on her.

The crux of Appellant's argument is that the victim's testimony was uncorroborated and unbelievable. However, it is well-settled that a defendant can be convicted of rape based solely upon the uncorroborated testimony of the victim. State v. McKnight, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994). Furthermore, questions of the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier of fact. State v. Goode,

956 S.W.2d 521, 526 (Tenn. Crim. App. 1997); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). The jury obviously accredited the victim's testimony, and this Court is not at liberty to overturn the jury's assessment.

After reviewing the testimony in the light most favorable to the state, we conclude there is sufficient evidence for a rational trier of fact to find that Appellant, through force or coercion, unlawfully sexually penetrated the victim in three (3) separate instances.[3] This issue has no merit.

## VICTIM'S MENTAL HEALTH RECORDS

Appellant challenges his convictions on the basis of several rulings by the trial court denying him access to information and testimony concerning the victim's mental health records and history. Appellant alleges that the trial court erred in refusing to allow Appellant to cross-examine the victim concerning her mental condition, in refusing the allow into evidence D.M.'s mental health records, and in quashing a subpoena for Dr. Susan O'Connor, the psychiatrist who was counseling D.M. Appellant further argues that the trial court erred in ruling that Appellant could not elicit testimony that D.M. had been receiving counseling at the Rutherford County Guidance Center.

### A. Background

Prior to trial, the defense learned that the victim had been receiving counseling at the Rutherford County Guidance Center for approximately thirty (30) days prior to the incident on April 23. Appellant filed a motion for an independent psychological examination of the victim and requested that the state

---

[3] Although not raised by either party, we have examined the record and find that three (3) separate convictions for rape are constitutionally permissible in this case. *See* State v. Barney, __ S.W.2d __ (Tenn. 1999).

produce the victim's psychiatric records from the Guidance Center. The trial court denied Appellant's motion for an independent psychological examination of the victim. After conducting an *in camera* inspection of the victim's psychiatric records, the trial court also denied Appellant's motion for production of those records, finding such records to be irrelevant. Furthermore, the trial court precluded Appellant from cross-examining the witness as to her mental condition on relevancy grounds as well. However, the trial court added, "I mean, if you can tie it in and make it relevant, yes, but general fishing expeditions to embarrass . . . and intimidate" the witness would be prohibited.

## B. Access to Victim's Psychiatric Records

Appellant claims that he should have been allowed to examine the victim's psychiatric records for the purpose of impeaching her, and the trial court erred in denying him access to such records. *See* State v. Barnes, 703 S.W.2d 611, 617 (Tenn.1985) (holding that it is permissible "to cross-examine a key accusatory witness in a criminal case as to his mental state or condition . . . for the purpose of impeaching the witness."). The trial court conducted an *in camera* inspection of D.M.'s mental health records to determine the probative value of such records. However, the trial court determined that the information contained in the records was irrelevant. We agree. The records indicate that D.M. sought counseling for anxiety and panic attacks. There is no evidence that D.M. was delusional or prone to fabrication. Nothing in the records pertained to D.M.'s credibility or the probative value of her testimony. Our review of the records shows no information which could reasonably have been helpful to the defense in challenging the victim's veracity. The trial court properly denied Appellant access to the victim's confidential mental health records. *See* State v. Middlebrooks, 840 S.W.2d 317, 332-33 (Tenn. 1992).

## C. Cross-Examination of Victim

Appellant also claims that he was denied his right of confrontation when the court refused to allow defense counsel to cross-examine the victim concerning her mental condition. He further argues that the trial court improperly restricted his cross-examination of the victim's preliminary hearing testimony and refused to allow him to cross-examine the victim regarding her alleged purchases of illegal drugs.

> The confrontation clause of the Sixth Amendment provides two types of protection for criminal defendants: the right to physically face those who testify against them, and the right to cross-examine witnesses. Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40, 53 (1987). The right to cross-examine witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Id., 480 U.S. at 53, 107 S.Ct. at 999, 94 L.Ed.2d at 54. Therefore, the right to confront witnesses is satisfied if defense counsel receives wide latitude at trial to cross-examine, because the confrontation clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. (quoting Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985)).

State v. Middlebrooks, 840 S.W.2d at 332-33. The United States Supreme Court has recognized that the right to "confront and to cross- examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed. 297 (1973). For instance, a trial judge has the discretion "to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Michigan v. Lucas, 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)).

The trial court ruled that Appellant could not cross-examine the victim as to her mental condition because it was irrelevant. However, the trial court noted that Appellant could cross-examine the victim on her mental state if it became relevant, but "general fishing expeditions" designed to embarrass and intimidate the victim would not be allowed. This ruling was entirely proper. Michigan v. Lucas, 500 U.S. at 149, 111 S.Ct. at 1746; Chambers v. Mississippi, 410 U.S. at 295, 93 S.Ct. at 1046. Although a criminal defendant has the right to confront and cross-examine witnesses against him, that right is limited by Rule 402 of the Tennessee Rules of Evidence in that neither party "may cross-examine a witness on matters that are irrelevant." State v. Williams, 929 S.W.2d 385, 389 (Tenn. Crim. App. 1996) (citation omitted).

Furthermore, the trial court did not unduly restrict the cross-examination regarding the victim's preliminary hearing testimony. Defense counsel thoroughly cross-examined the victim about why she did not immediately call for help during or after the rape, her abusive past relationships, and the inconsistencies between her testimony at trial and her testimony at the preliminary hearing.

Appellant likewise argues that the trial court erred in excluding defense questions to the victim regarding alleged statements made by D.M. that she was buying cocaine for her boyfriend. We find this contention without merit. Not only was such questioning irrelevant, but it was clearly designed to harass the victim. *See* Tenn. R. Evid. 402 and 403. "While great latitude in the area of impeachment should be granted, the propriety, scope, and manner of the cross examination still rest with the discretion of the trial court." State v. Forbes, 918 S.W.2d 431, 450 (Tenn. Crim. App. 1995). This Court will not disturb discretionary limits on cross-examination absent a showing of clear and plain

abuse. Id. The trial court did not abuse its discretion in excluding such questioning.

## D. Motion to Quash

Appellant also claims that he was denied his right to compulsory process when the trial court quashed a subpoena for Dr. Susan O'Connor, the psychiatrist who was counseling the victim at the Rutherford County Guidance Center. The trial court, after finding that the victim's mental health history was irrelevant, excused Dr. O'Connor from testifying for the defense.

Tenn. Code Ann. § 24-1-207 (a) provides, in pertinent part:

> [c]ommunications between a patient and a licensed physician when practicing as a psychiatrist in the course of and in connection with a therapeutic counseling relationship . . . are privileged in proceedings before judicial and quasi-judicial tribunals. Neither the psychiatrist nor any member of the staff may testify <u>or be compelled to testify</u> as to such communications or otherwise reveal them in such proceedings without consent of the patient except:
>
> (1) In proceedings in which the patient raises the issue of the patient's mental or emotional condition;
>
> (2) In proceedings for which the psychiatrist was ordered by the tribunal to examine the patient if the patient was advised that communications to the psychiatrist would not be privileged, but testimony as to the communications is admissible only on issues involving the patient's mental or emotional condition; and
>
> (3) In proceedings to involuntarily hospitalize the patient under § 33-6-103 or § 33-6-104, if the psychiatrist decides that the patient is in need of care and treatment in a residential facility. Unless otherwise ordered by the court, the exception is limited to disclosures necessary to establish that the patient poses a substantial likelihood of serious harm requiring involuntary hospitalization under § 33-6-103 or § 33-6-104.

(Emphasis added).

None of the listed exceptions apply in this case. Further, the victim clearly did not consent to Dr. O'Connor testifying regarding her counseling sessions. Moreover, the trial court previously deemed the victim's mental health to be

irrelevant at trial. Therefore, the trial court properly quashed the subpoena for Dr. O'Connor.

## E. Conclusion

After a careful review of the victim's mental health records submitted under seal to this Court, we agree with the trial court that the victim's psychiatric history had no bearing on her credibility. We, therefore, conclude that Appellant was not denied the opportunity "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness." Davis v. Alaska, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, 355 (1974); *see also* State v. Middlebrooks, 840 S.W.2d at 333.

This issue is without merit.

## LEADING QUESTIONS

Appellant asserts that he was denied a fair trial when the state asked allegedly improper and highly prejudicial leading questions of a prosecution witness. Gwendolyn Willard, the emergency room nurse who examined D.M. the evening of the rape, testified that she observed red marks on the victim's forearms and lower left leg. On cross-examination, Willard acknowledged that the victim did not attribute the red markings on her body to any force that occurred during the rape. On re-direct examination, the following exchange occurred:

> Q. Well, she never said that's what happened to her, but are they [the markings] not consistent with what happened to her?

-14-

MR. DANIEL: Your Honor, he is leading the witness now, and this is his witness.

THE COURT: Your response.

GEN. HOLCOMBE: I ' l l rephrase it.

THE COURT: All right.

GEN. HOLCOMBE: You said that you had her history. And although she did not link these, my question is, would you tell us whether or not they are consistent with that history.

MR. DANIEL: Objection, your Honor, you know, anything could be consistent with anything. I mean that doesn't --

THE COURT: Overruled. You can answer.

A. They could be consistent with this history.

The state concedes that the first question was, in fact, a leading question. The second question, however, was not leading. "A leading question has been defined as one which 'suggests the specific answer desired.'" N. Cohen, D. Paine & Sheppeard, *Tennessee Law of Evidence* § 611.6 (3d ed.1995) (citation omitted). The state's question, as ultimately posed, did not suggest the answer desired. In any event, Appellant has not shown how he was prejudiced by the alleged leading questions and, therefore, is not entitled to relief. State v. Caughron, 855 S.W.2d 526, 538 (Tenn. 1993).

This issue is without merit.

## INTRODUCTION OF MEDICAL REPORT

In his next issue, Appellant argues that the trial court erred in admitting into evidence the victim's emergency room report. He insists that the report was hearsay and not admissible under any of the hearsay exceptions. Furthermore, he contends that the trial court erred in passing such report to the jury.

During Gwendolyn Willard's testimony, she utilized the emergency room triage assessment report to refresh her memory. In the report, Willard noted that the victim was a patient at the Rutherford County Guidance Center. During cross-examination, the defense sought to question Willard about the Guidance Center notation[4] and requested that the report be submitted as a part of the defense offer of proof regarding the victim's mental state. The state suggested that the report be admitted as an exhibit which would not be passed to the jury. Defense counsel replied, "[t]hat's fine." Subsequently during the trial, the state requested that a redacted version[5] of the record be passed to the jury, and Appellant objected. The trial court overruled Appellant's objection and allowed the redacted record to be passed.

Initially, we note that this issue is waived because Appellant failed to make a contemporaneous objection to the admission of the exhibit. State v. Philpott, 882 S.W.2d 394, 405 (Tenn. Crim. App. 1994); Tenn. R. App. P. 36(a). Indeed, Appellant actually consented to the report's admission into evidence.

---

[4] The trial court denied the request based upon previous rulings concerning the victim's psychological state.

[5] The redacted version deleted the reference to the Rutherford County Guidance Center.

Although Appellant claims that he objected to the admission of the report, he merely objected to the exhibit being passed to the jury. This Court has previously stated the jury "is entitled to review those exhibits which have been admitted as evidence in the case." State v. Richard Allen Kidd, II, C.C.A. No. 03C01-9607-CC-00272, 1997 WL 789909 at *4, Anderson County (Tenn. Crim. App. filed December 23, 1997, at Knoxville).

Furthermore, the hospital records of the victim are admissible under Tenn. R. Evid. 803(4), because the report (1) was made for the purpose of medical diagnosis and treatment; (2) describes the medical history of the declarant, i.e., the victim; and (3) is "reasonably pertinent to diagnosis and treatment." State v. Edwards, 868 S.W.2d 682, 699 (Tenn. Crim. App. 1993).

Nevertheless, Appellant has not demonstrated how he was prejudiced by the admission of this evidence. The information contained in the report was presented to the jury through the testimony of Willard, who essentially read the report into the record. Therefore, any error in the admission of the report into evidence was at most harmless. See State v. Edwards, 868 S.W.2d at 699.

This issue has no merit.

## PHOTOGRAPHIC LINE-UP

Appellant claims that the trial court erred in allowing the state to admit the photographic line-up in which the victim identified Appellant as the perpetrator of the rape. He argues that the line-up was irrelevant at trial because he admitted that he assisted the victim with her vehicle on April 23. Further, he asserts that the photographic line-up was unduly prejudicial in that the photograph depicted him as a "person accused of crime."

We must note that Appellant did not contemporaneously object to the admission of the photographic line-up. As such, this issue is waived. State v. Gilmore, 823 S.W.2d 566, 570 (Tenn. Crim. App. 1991); Tenn. R. App. P. 36(a). Although Appellant insists that he did object, such objection was untimely. Defense counsel objected to the admission of the line-up at the conclusion of the witness' testimony. The line-up had already been admitted into evidence, and any objection was, at that point, too late.

Regardless, the photographic line-up was properly admitted. "[T]he decision to admit or exclude evidence is left to the sound discretion of the trial judge and the judge's decision will not be disturbed unless it has been arbitrarily exercised." State v. Davis, 872 S.W.2d 950, 955 (Tenn. Crim. App. 1993). Evidence that the victim identified Appellant as the perpetrator of a crime is highly relevant. Tenn. R. Evid. 401. Furthermore, the probative value of such evidence outweighs any prejudicial impact. Certainly, the jury was aware that Appellant had been "accused of crime," as he was standing trial for a criminal offense.

This issue is without merit.


## APPELLANT'S PRIOR CONVICTIONS


In his next issue Appellant challenges the trial court's ruling on the admissibility of a prior conviction for impeachment purposes. He argues that his prior conviction for assault with intent to rob is similar to rape in that both offenses involve "assaultive conduct." Further, he asserts that the probative value of the prior conviction on the issue of credibility is slight, and therefore, is outweighed by its prejudicial impact.

Under Rule 609 of the Tennessee Rules of Evidence, there are specific procedures to be followed before prior convictions of a criminal accused may be admitted into evidence for impeachment purposes. The state must provide the accused with written notice prior to trial of the proposed impeaching conviction(s). Tenn. R. Evid. 609(a)(3). Prior to the testimony of the accused, the trial court must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Id.; *see also* State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App.1992). In making such a determination, the trial court should "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." N. Cohen, D. Paine & Sheppeard, *Tennessee Law of Evidence* § 609.9 at p. 376 (3d ed.1995). Secondly, the trial court must "analyze the relevance the impeaching conviction has to the issue of credibility." Id.

The state gave notice of its intent to impeach Appellant, should he choose to testify, with a prior conviction in Michigan of assault with the intent to rob. Prior to the defense proof, the trial court conducted a jury-out hearing to determine the admissibility of Appellant's prior conviction for impeachment. The trial court found that the offenses were inherently different, in that the prior conviction involved a robbery whereas Appellant was standing trial for a sexual offense. Furthermore, the trial court found that the probative value on the issue of Appellant's credibility outweighed any prejudicial effect. Therefore, the trial court ruled that the state could impeach Appellant with the prior offense, if he testified.

We agree with the trial court that the impeaching conviction was dissimilar to the present offense of rape. Despite the violence inherent in each offense, one offense is sexual in nature while the other involves a robbery. Nevertheless, the fact that the prior offense is similar to the crime for which a defendant is being

tried does not necessarily require that it be excluded. State v. Blevins, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997).

Appellant's prior conviction was highly probative of credibility in that it involved robbery which implicates the critical element of dishonesty. State v. Carruthers, 676 S.W.2d 935, 941 (Tenn. 1984); State v. Blevins, 968 S.W.2d at 893. Courts of this state have held that the offenses of burglary and theft are "highly probative of credibility," because these crimes involve dishonesty. State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citing State v. Crank, 721 S.W.2d 264, 266-67 (Tenn. Crim. App. 1986); State v. Tune, 872 S.W.2d 922, 927 (Tenn. Crim. App. 1993); State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987)).

Under this Court's review, we do not re-evaluate whether the probative value of the defendant's prior conviction outweighs the possible prejudicial effect it might have had. State v. Roberts, 943 S.W.2d 403, 408 (Tenn. Crim. App. 1996). We may only reverse the decision of the trial court if we find that it abused its discretion in admitting the convictions. Id.; State v. Tune, 872 S.W.2d at 927. As Appellant's prior conviction of assault with intent to rob is probative of credibility, the trial court did not abuse its discretion in ruling that the state could impeach Appellant with this prior conviction, if he chose to testify.

This issue is without merit.


**LIST OF WITNESSES**


Appellant alleges that the trial court erred in allowing the state to inform the jury that Appellant had provided a list of "alibi witnesses." He argues that the prosecutor's statement is analogous to that in State v. Meeks, 876 S.W.2d 121,

-20-

129 (Tenn. Crim. App. 1993), where this Court overturned the defendant's convictions after finding that the state had erroneously referred to the defense of alibi contrary to Tenn. R. Crim. P. 12.1(f).

In Meeks, the defense had filed a notice of a potential alibi witness, Ronnie Anderson, but withdrew its intent to present an alibi defense during a bench conference at trial. Id. at 128-29. During cross-examination, the prosecutor questioned Anderson as to whether he knew that he had been listed as an alibi witness for the defense. Id. at 129. The trial court sustained the defendant's objection to this question, but allowed further inquiry into the alibi defense by the prosecution. Id. This Court reversed the defendant's conviction due to a violation of Tenn. R. Crim. P. 12.1(f), which prohibits the admission into evidence the defendant's intent to rely on the alibi defense once that intention has been withdrawn. Id. at 128-29. This Court observed that the error was "compounded when the State was allowed in closing argument to make adversarial use of the defendant's withdrawal of the alibi defense." Id. at 129.

In the case *sub judice*, Appellant points to an exchange between the state and Belinda Talley where the prosecutor asked if she knew Robert Verge. Mrs. Talley responded, "[t]hat's my dad. Which one? It's [sic] two Robert Verges." The prosecutor replied, "[t]his is just a list of witnesses provided by Mr. Daniel to us."

We find the present case to be distinguishable from this Court's holding in Meeks. First, the holding in Meeks was based upon a violation of Tenn. R. Crim. P. 12.1(f) due to the fact that the defense had withdrawn its intention to use an alibi defense at trial. In this case, Appellant had not withdrawn his notice of alibi. Indeed, the defense presented testimony as to Appellant's whereabouts during the time of the offenses, and defense counsel made an alibi argument during its

-21-

closing. Secondly, unlike in <u>Meeks</u>, the prosecution did not refer to the witnesses as "alibi witnesses" but merely referred to the list as a "list of witnesses."

Furthermore, the question was an isolated incident in that the prosecutor's comment was the only one which could vaguely be construed as commenting on the defense's change in tactic. We conclude that Appellant was not prejudiced by the prosecution's reference to a "list of witnesses."

This issue is without merit.

## VICTIM'S HEARSAY STATEMENT

In his next issue, Appellant complains that the state and trial court improperly characterized certain statements made by the victim to defense witnesses as hearsay. He argues that any statement made by the victim is an admission and is admissible as an admission by a party opponent under Tenn. R. Evid. 803(1.2). We disagree. The parties to a criminal case are the State of Tennessee and the defendant. The victim is a witness, albeit an interested one, in the litigation. Therefore, the victim's statements do not fall under the purview of Rule 803(1.2). This issue is without merit.

## CLOSING ARGUMENT

Appellant also argues that the trial court denied him a fair trial by making improper and biased rulings during closing argument. Specifically Appellant alleges that the trial court erred in sustaining the state's objections to defense counsel's use of the words "preposterous" and "I guarantee" during closing

argument. Furthermore, he claims that the trial court cut off defense counsel's argument in mid-sentence and refused to allow counsel five seconds to conclude his final sentence, while giving the prosecution an additional thirty (30) seconds for argument. Additionally, he asserts that in the state's closing argument, the prosecutor erroneously referred to the defense's failure to present evidence of motive after the defense had been precluded from introducing such evidence. Finally, he contends that the prosecutor improperly injected his personal opinion into his closing argument. We will take each of these assignments of error in turn.

## A. Defense Closing Argument

Appellant claims that the trial court erred in sustaining the state's objections to defense counsel's argument on the basis that defense counsel improperly asserted his personal opinion. Defense counsel began his argument by stating that the prosecutor "said to you [jury] something that is absolutely, in my mind, preposterous." The state objected, and the trial court sustained the objection. Subsequently, defense counsel stated on two separate occasions, "I guarantee" in conjunction with his argument. The prosecution's objections to such comments were sustained by the trial court.

An attorney should not inject his personal opinions in closing argument. State v. Payne, 791 S.W.2d 10, 20 (Tenn.1990); *see also* State v. Hicks, 618 S.W.2d 510, 516, 517 (Tenn. Crim. App.1981); Sup. Ct. Rule 8, DR 7-106(C)(4). Each of these contested statements clearly expressed defense counsel's opinion. The trial court properly sustained the state's objections to these comments.

Appellant further contends that the trial court showed partiality in limiting the time defense counsel was allowed to argue. We do not agree. Prior to argument, the trial court clearly stated that both sides would be allowed only thirty

(30) minutes for argument. This was entirely within the court's discretion. Tenn. R. Crim. Pro 29.1(c). Although Appellant complains that the trial court cut off defense counsel in mid-sentence without allotting any additional time to finish his sentence, the trial court similarly terminated the state's argument when the prosecution's time had ended. Furthermore, the additional thirty (30) seconds afforded the state for its argument was to compensate for the time used by defense counsel's repeated objections and subsequent arguments with the trial court's rulings. "Trial judges are accorded wide discretion in control of the argument." State v. Zirkle, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). The trial court did not abuse its discretion.

This issue has no merit.

### B. Prosecutorial Misconduct

Appellant also argues that the state committed prosecutorial misconduct by referring to the lack of proof that the victim had a motive for fabricating the rape when the defense was precluded from going into possible motives of the victim. He also claims that the prosecutor improperly asserted his own personal opinion during closing argument.

### 1.

In its summation, the defense argued that the victim fabricated the rape in order to gain sympathy from her estranged boyfriend. In rebuttal, the assistant district attorney stated:

> Now, he wants you to believe that she is an emotional basket case, that she did this for some motive. And I submit to you there really isn't a motive, and I'm going to come back to this, but let me ask you this. Did you hear a single witness get up on this stand, in all the witnesses that you've heard, and say she is the type of person that does this? She's done this before. She will make up a wild allegation to get somebody back. Did Jerry Hunter say that? Did Terry Alexander say that? Did anyone else [say] that? In all the supposed boyfriends that she's had, this person who goes around

doing this type of thing, did a single person get up here and say that's the kind of thing she'd say? No, they didn't. Not a single person said that about her. Not a single person said she would make something like this up. Now, let's talk about that.

The prosecution's argument continued:

Now, why didn't she immediately call the police? Just like he wants you to believe that there ought to be a climax in every single rape case, even though that's not the law, he wants you to say every rape victim needs to call 911 immediately, or every rape victim needs to run right over and report this. <u>She gave you a very honest answer why she didn't</u>. She said because everybody knows what a rape victim goes through. And that's exactly what she's gone through; isn't it? A long preliminary hearing, statements, stayed at the hospital for hours that night undergoing a rape examination, had to turn over her clothes, had to turn over her blanket.

. . . .

. . . She sat on this stand for hours and had to be questioned about every single incident, had to bring up past boyfriends, <u>every type of slur</u> that could be thrown against her as to why she was doing this. She was right in not doing that. Did she do it to be vindictive? <u>She didn't even want to call the police</u>. . . .

(Emphasis added).[6]

### 2.

Both the state and the defense are afforded wide latitude in arguing their cases to the jury. <u>State v. Bigbee</u>, 885 S.W.2d 797, 809 (Tenn. 1994); <u>State v. Zirkle</u>, 910 S.W.2d at 888. However, when the prosecution's argument goes beyond that wide latitude afforded, the test to determine whether reversal is required is "whether the impropriety 'affected the verdict to the prejudice of the defendant.'" <u>State v. Bigbee</u>, 885 S.W.2d at 809 (quoting <u>Harrington v. State</u>, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965)).

In reviewing a claim of prosecutorial misconduct during closing argument, we are guided by such factors as:

---

[6] Emphasis added to point out specific portions of prosecution's argument that Appellant finds objectionable.

1.  The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2. The curative measures undertaken by the court and the prosecution.

3. The intent of the prosecution in making the improper statement.

4. The cumulative effect of the improper conduct and any other errors in the record.

5. The relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

### 3.

Appellant contends that the prosecution's reference to Appellant's lack of evidence of motive was improper because he was precluded from introducing such evidence by the trial court. However, contrary to Appellant's assertion, the trial court did not restrict the defense's ability to explore the theory of motive or fabrication through witness testimony or argument. The trial court informed Appellant that he would be able to cross-examine the victim concerning her mental condition, if that condition was relevant to the issues at trial. The trial court merely prevented Appellant from delving into the victim's psychiatric history as a means of embarrassing or harassing the victim.

In any event, the state's argument was not directed at the victim's psychological state, but was in response to defense counsel's argument that the victim fabricated the incident. The state argued that none of the witnesses supported the defense theory. "The bounds of proper argument largely depend upon the facts in evidence, the character of the trial, and the conduct of opposing counsel." State v. Coker, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). The prosecution's argument was not improper.

### 4.

Appellant also claims that the prosecution improperly asserted a personal opinion during its closing argument. A lawyer must not assert his personal opinion as to the credibility of a witness, or as to the guilt or innocence of the defendant. State v. Henley, 774 S.W.2d 908, 911 (Tenn. 1989). Furthermore, it is "unprofessional conduct for a prosecutor in his argument to the jury to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence, or the guilt of the defendant." Id. at 911.

The prosecutor improperly commented upon the victim's testimony when he stated that she gave "a very honest answer" as he was expressing his personal belief as to the truth of her testimony. However, this was an isolated incident, and taken in context of the argument as a whole, the comment does not appear to have prejudiced the Appellant. See State v. Henley, 774 S.W.2d at 911. Moreover, the remaining comments cited by Appellant are not personal opinion. The prosecution's statements that the victim had to endure slurs to her character and that she did not want to call the police were proper comments based upon facts in the record. See Coker v. State, 911 S.W.2d at 368.

**5.**

None of the alleged prosecutorial errors during closing argument appear to have affected the verdict to Appellant's prejudice and do not warrant a reversal of his convictions. See State v. Bates, 804 S.W.2d 868, 881 (Tenn. 1991). This issue has no merit.

**SENTENCING**

In its cross-appeal, the state argues that the trial court erred in sentencing Appellant to thirteen (13) years, one year above the minimum sentence for a

-27-

Range II offender of a Class B felony. Specifically, the state contends that the trial court erred in failing to apply certain enhancement factors. Therefore, the state claims that the sentence was too lenient, and Appellant should have received a sentence in the middle of the range.

**A.**

When a party complains of the sentence imposed at trial, we must conduct a *de novo* review with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all the relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, if the trial court fails to comply with the statutory principles, there is no presumption of correctness and our review is *de novo*.

The Sentencing Reform Act of 1989 established specific procedures which must be followed in sentencing. These procedures, codified at Tenn. Code Ann. § 40-35-210, mandated the trial court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(c) further provides that the minimum sentence within the range is the presumptive sentence. The trial court must begin with the minimum sentence and enhance that sentence to appropriately reflect any statutory enhancement factors that the court finds to be present. Tenn. Code

-28-

Ann. § 40-35-210(d). After enhancing the sentence, the court must reduce the sentence appropriate to the weight of any mitigating factors that the court finds. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

## B.

The trial court found that Appellant was a Range II, multiple offender. The court found as enhancement factors that Appellant had a previous history of criminal behavior in addition to those necessary to establish the range, Tenn. Code Ann. § 40-35-114(1); and Appellant had a history of unwillingness to comply with the conditions of a sentence involving release in the community, Tenn. Code Ann. § 40-35-114(8).[7] The trial court rejected two (2) enhancement factors proposed by the state: (1) that the offense was committed to gratify Appellant's desire for pleasure or excitement, Tenn. Code Ann. § 40-35-114(7); and (2) that the crime was committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(16). In mitigation, the trial court found that Appellant had gainful employment, was an excellent worker, had the support of members of the community, had conducted himself as an upstanding citizen in the past and had supported his family and

---

[7] The trial court also found as an enhancement factor "the nature and circumstances of the offense which dealt with three separate penetrations of various types giving rise to the offense." This enhancement factor listed is not a statutory enhancement factor and is, therefore, improper. See State v. Strickland, 885 S.W.2d 85, 89 (Tenn. Crim. App. 1993).

church. Tenn. Code Ann. § 40-35-113(13). After weighing the enhancement and mitigating factors present in this case, the trial court sentenced Appellant to concurrent terms of thirteen (13) years for each conviction of rape.

**C.**

The state claims that the trial court erroneously failed to consider two enhancement factors: (1) that the offense was committed to gratify Appellant's desire for pleasure or excitement, Tenn. Code Ann. § 40-35-114(7); and (2) that the crime was committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(16).[8] We disagree.

**1.**

In State v. Adams, 864 S.W.2d 31, 34-35 (Tenn. 1993), our Supreme Court rejected the notion that "as a matter of law, every rape is implicitly committed for the purpose of pleasure or excitement." The Court recognized that some acts of rape are "simply acts of brutality resulting from hatred or the desire to seek revenge, control, intimidate, or are the product of a misguided desire to just abuse another human being." Id. at 35. The Court held that because pleasure or excitement is not an essential element of the offense of rape, Tenn. Code Ann. § 40-35-114(7) may be used to enhance a defendant's sentence for rape. Id. However, the state has the burden of demonstrating that the crime was sexually motivated. Id.; *see also* State v. Hoyt, 928 S.W.2d 935, 949 (Tenn. Crim. App. 1995).

---

[8] Neither party contests the applicability of Tenn. Code Ann. §40-35-114(1) and (8) as enhancement factors. We agree. Appellant has a prior record consisting of convictions for gross sexual imposition and criminal trespass in Ohio in addition to his felony convictions establishing him as a Range II offender. Tenn. Code Ann. § 40-35-114(1). Furthermore, Appellant violated parole on a conviction in Michigan, demonstrating a history of unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(8).

In this case the State points to the lack of brutality in this rape, Appellant's inquiry of the victim as to whether she liked oral sex, and Appellant's apology to the victim as evidence that the rape was committed to satisfy Appellant's desire for pleasure and excitement. However, this testimony is so ambiguous as to Appellant's purpose in committing this crime, that we are not prepared to hold the trial judge in error for failing to find that such evidence makes out enhancement factor (7). This issue is without merit.

## 2.

Having just argued that Appellant's benign behavior in committing this rape indicates it was not a crime of violence, the State, rather inconsistently, argues that Appellant's actions in holding the victim around the neck, threatening her with injury if she did not submit to his advances, and wrapping bedcovers around the victim's head indicate the crime was committed under circumstances where there was great potential for bodily injury to the victim. Tenn. Code Ann. Sec. 40-35-114(16). While this behavior is reprehensible it does not appear to have subjected the victim to a risk of bodily injury greater than that ordinarily attendant in a rape. We therefore again decline to hold the trial court in error for failing to apply this enhancement factor. This issue is without merit.

## D.

We find that the trial court properly rejected the two (2) additional enhancement factors proposed by the State when it sentenced Appellant. The state does not contest the applicability of mitigating factors found by the trial court but suggests that such mitigating factors are entitled to little weight. However, it

is apparent that the trial court gave great weight to the mitigating factors, as evidenced by Appellant's sentence of one (1) year above the minimum sentence. This was certainly within the trial court's discretion. <u>State v. Leggs</u>, 955 S.W.2d at 848.[9]

For the reasons stated, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
DAVID G. HAYES, JUDGE

---

[9]The Appellant received a very lenient sentence. However, the weight to be given applicable mitigating factors is a matter entrusted to the trial court and we are not ordinarily free to second guess that decision.