STATE of Tennessee, Appellee,

v.

Steve HENLEY, Appellant.

Supreme Court of Tennessee,
at Nashville.

April 10, 1989.

J.H. Reneau, III, Reneau & Reneau, Celina, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Miriam Nabors Banks, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

O'BRIEN, Justice.

Steve Henley and Terry Wayne Flatt were indicted by the Jackson County Grand Jury on two (2) counts of first degree murder, two (2) counts of felony murder, two (2) counts of armed robbery and one (1) count of aggravated arson. Flatt submitted guilty pleas on two (2) counts of second degree murder with an agreed sentence of twenty-five (25) years. He received ten (10) years on each of the robbery counts and seven (7) years for arson with all sentences to be served concurrently as a Range I standard offender. Henley was found guilty in a jury trial on two (2) counts of first degree murder and sentenced to death. He was convicted of aggravated arson and sentenced to twenty (20) years as a Range I standard offender. He was acquitted on two (2) counts of felony murder and two (2) counts of robbery.

A number of issues have been raised for review, mainly relating to the death penalty. In procedural sequence in the trial court the first matter complained of occurred in the innocence-guilt phase of the proceedings. Defendant insists it was error for the trial judge to permit cross-examination relative to a prior conviction in the absence of a court finding that its probative value outweighed its prejudicial effect in accordance with the rule established in *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976). In *Morgan* this Court adopted Federal Rule of Evidence 609 which provides for impeachment by evidence of prior conviction of a crime for the purpose of attacking the credibility of a witness. Evidence that he has been convicted of a crime shall be admitted under criteria set out in the rule if the crime (1) was punishable by death or imprisonment in excess of one (1) year and the Court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, *regardless of the punishment.* (Emphasis supplied).

■ Prior to cross-examination of defendant in this case the trial judge held a hearing out of the presence of the jury and determined that defendant had been convicted of a previous offense involving dishonesty which had occurred within the preceding ten (10) years. He allowed cross-examination to bring out evidence of this prior conviction for the purpose of impeaching defendant's credibility. The cross-examination was allowable under the *Morgan* rule and the issue is without merit.

■ We note that the Assistant District Attorney General who represented the State did not follow the requirements of *Morgan* in his cross-examination. In *Morgan,* p. 389, the Court specifically applied the following statement from *Hendricks v. State,* 162 Tenn. 563, 39 S.W.2d 580, 581 (1931), "The inquiry must be limited to the fact of a former conviction and of what crime, with the object only of affecting the credibility of the witness, not prejudicing the minds of the jury as to the guilt of the defendant witness of the crime for which he is on trial." However, this defect in the cross-examination of defendant is not complained of here, did not accrue to the prejudice of the defendant and at most, was harmless error under the facts of this case. Cf. *State v. McKay,* 680 S.W.2d 447, 452 (Tenn.1984).

Complaint is made about closing argument on behalf of the State which is divided into several sub-issues, the first of which complains of a statement made by the Attorney General purportedly having the effect of personally vouching for the credibility of a witness.

■ The statement complained of refers to the testimony of the accomplice, Terry

Flatt. The District Attorney General in responding to argument by defense counsel commented, "I thought Flatt made one of the best witnesses I've ever seen." The principal evidence against defendant was the testimony of Flatt. Defense counsel made a strong attack on this testimony, as he properly should have, endeavoring to show that Flatt had sold his testimony to the State in return for a minimal sentence on the charges against him. A lawyer should not assert his personal opinion as to the credibility of a witness, or as to the guilt or innocence of an accused. He may argue, on his analysis of the evidence. Code of Professional Responsibility, Canon 7, DR 7–106(C)(4), Trial Conduct. It is unprofessional conduct for a prosecutor in his argument to the jury to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence, or the guilt of a defendant. ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8. The reasons for such requirements are obvious, and are stated in the commentary to the foregoing standard. Expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued. See *Lackey v. State*, 578 S.W.2d 101, 107 (Tenn.Cr.App. 1978). Certainly, any intentional effort to influence the members of a jury by expressions of personal opinion cannot be condoned. Taken in context the remark of the Attorney General was innocuous and fell far short of constituting prejudice to the defendant. We find any error to be harmless. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a). See *State v. Coury*, 697 S.W.2d 373, 377 (Tenn.Cr.App.1985).

■ The same is true of defendant's complaint regarding the Attorney General's argument on his reasons for negotiating a plea bargain agreement with Terry Flatt. The transcript clearly shows he was responding to defense counsel's attack on the credibility of Terry Flatt to the effect that his testimony was the product of the plea bargain. It appears that State's counsel may have been about to enter upon extraneous matters, not in evidence, concerning the plea bargain process. He was interrupted by the objection of defense counsel and he abandoned this line of argument. There could have been no prejudice to the defendant.

■ We also give short shrift to the complaint about the Attorney General's remarks concerning the plea bargain agreement made with Flatt and the length of time he would serve in prison. These comments were in direct response to the defense argument in reference to the plea bargain negotiations in which it was said, inter alia, "apparently there was a lot of negotiations, and finally we've got, struck a deal, on being eligible to get out of the penitentiary in less than seven years. To stand here and tell you that that man doesn't have a motive," [to testify] ... The trial judge became engaged in the discussion when opposing counsel began arguing with each other instead of addressing the court as they properly should have done. The atmosphere was tense, the argument was improper on both sides. The effect was harmless and without prejudice to the defendant.

Two issues are raised pertaining to the State's argument at the sentencing hearing. The first was a reference by the Attorney General to the fear in the eyes and the minds and the hearts of the homicide victims immediately prior to their deaths.

It is the defendant's insistence that the argument of the Attorney General was inflammatory and intemperate, warranting reversal. The Attorney General took the position that his comments were entirely proper in light of his duty to prove the aggravating circumstances upon which the State relied.

The State cited the statutory aggravating circumstances contained in T.C.A. § 39–2–203(i)(5) and (7):

(5) The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind.

(7) The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, arson, robbery, ...

In summary the evidence showed that Fred and Edna Stafford lived on Pine Lick Creek Road in Jackson County, just a short distance from the farm, owned by Henley's family, where his grandmother lived. On the day of the Staffords' death Henley had visited his grandmother and obtained some mechanical parts for some work he was doing. Flatt was with him. Earlier in the day they had been driving about, tending to business affairs of Henley's. During that time they had consumed some beer and also had taken some drugs, referred to in the record as Dilaudids. According to Flatt, as they passed the Staffords' residence Henley commented, "there was some people that lived on that road that owed his grandmother or grandfather some money, and they done him wrong, his grandparents wrong years before, and he was going to stop and see about collecting some money off them." Henley let Flatt out of the truck just before he reached his grandmother's house. When he returned five or ten minutes later he had a .22 rifle with him. They stopped fifty or seventy-five yards up the road where Henley loaded some more shells into the rifle. He also filled a plastic jug with gasoline from a five-gallon can he had in the back of the truck. They proceeded on toward the Stafford residence. When they reached there Mr. and Mrs. Stafford were standing on the left-hand side of the road looking at a small bridge where some construction work had recently been done. Henley stopped the truck, jumped out and told them, "I want your money, if you don't give it to me this man in the truck here, he's going to kill me." He then directed them to go to the house. Mr. Stafford said, "Steve, if you want money or something, I got $80, maybe $100, you can have it." He forced them on to the house at gunpoint and told Flatt to bring the .22 rifle as he followed behind them. When they got within 20 or 30 feet of the house he told Flatt to give him the rifle and go back to the truck and get the plastic jug of gasoline. Flatt did as directed. As he reached the porch he saw Henley begin to shoot. He first shot Mr. Stafford then turned and shot Mrs. Stafford a time or two. While she was laying on the floor moaning and groaning he threw the rifle to Flatt, took out his pistol and shot her again with the pistol. He told Flatt to pour out some of the gas. Flatt endeavored to do as he was told and poured out a small amount. When he could not finish Henley took the container of gas from him and finished pouring it out. He then directed Flatt to light it. When Flatt said he could not he struck the match and as the flames went up they ran to the truck.

The house burned to the ground. The bodies of the Staffords were found in the ashes. All that remained of Mr. Stafford's body was part of the right leg and the trunk area. The body of Mrs. Stafford was similarly burned. It was determined that Mr. Stafford died from a gunshot wound to the chest with the bullet passing through his heart. Mrs. Stafford's death was caused by burns and inhalation of noxious gases from the fire. It was the opinion of the medical examiner that Mrs. Stafford lived a minute or longer after the fire began.

■ It is plain from a reading of the entire argument in the record that the Attorney General was arguing the elements of the statutory aggravating circumstance involving cruelty and torture or depravity of mind. This Court has said that it is not error for the prosecuting attorney to argue that which is warranted by reasonable inference from the evidence adduced at trial. *State v. Sutton*, 562 S.W.2d 820, 826 (Tenn. 1978). The Attorney General's reference was to the thoughts of the victims as they were marched up the driveway to their house with the certainty in their minds from the defendant's actions that they were to be subjected to serious injury or death. It cannot be doubted that mental torture can be imposed upon a victim and involves torture or depravity of mind just

as some physical act might. The prosecution was doing no more than arguing a permissible inference from the facts suggesting the mental state of the victims as they were forced toward their dwelling by the defendant.

A further objection was made to the concluding remarks of the District Attorney General as he adjured the jury to let the county and the State, know that all elderly people had a right to live in peace and quiet. Defense counsel moved for a mistrial which the court denied, admonishing State's counsel to "stay away from the crime in the streets argument." We do not believe the Attorney General's argument reached that pitch of intemperance or was inflammatory to the extent insisted upon by the defense. The Attorney General intimated that his argument was intended as a reference to deterrence. That is an area into which he may not venture. See *State v. Irick*, 762 S.W.2d 121, 131 (Tenn.1988). We are satisfied that the prosecutor's comments did not affect the jury's sentencing decision. These issues are overruled.

Defendant questions the sufficiency of the evidence on his conviction for first degree murder and for aggravated arson. He says there is no evidence independent of the testimony of Terry Flatt, who was an accomplice as a matter of law, to corroborate Flatt's testimony. He also says that in the absence of any proof of a criminal agency which caused the burning of the Stafford home, he cannot be convicted of arson.

A conviction may not be based upon an accomplice's testimony unless there is some fact testified to entirely independent of the accomplice's testimony which taken by itself leads to an inference, not only that a crime has been committed, but that the accused is implicated in the crime. *Mathis v. State*, 590 S.W.2d 449, 455 (Tenn.1979). The corroborative evidence may be direct or entirely circumstantial and it need not of itself be adequate to support a conviction. It is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect defendant with the commission of the crime charged. *Sherrill v. State*, 204 Tenn. 427, 321 S.W.2d 811, 815 (1959). See *State v. Carter*, 714 S.W.2d 241, 245 (Tenn. 1986).

The State clearly showed that a crime had taken place. Fred Stafford died as a result of a bullet passing through his heart. Edna Stafford died as a result of burns from the fire and inhalation of gases from the fire. A spent .22 rifle shell was found in the ashes near where Fred Stafford's body was lying. This cartridge was fired from a Marlin .22 rifle, located by law enforcement officers where Flatt testified defendant had hidden it and another weapon after the homicide. This rifle was never positively identified as the murder weapon because of its condition when it was found. David Henley, defendant's brother, testified it was similar to one he had acquired some four or five months before and had left in his grandmother's house for her protection. This rifle had a loose part on the end, as did the State's exhibit and the bluing was scratched off the sight in the same way. The rifle was no longer at his grandmother's house. Ronald Leonard identified the State's exhibit as an automatic .22, Glenfield rifle, made by Marlin, which looked just like a rifle he had traded to David Henley. At the time of the trade the Allen screw securing a ring holding the magazine in place was loose. The ring would slide off and on occasion the rifle would jam when fired. Defendant himself noted the similarity between the State's exhibit and his brother's rifle. He endeavored to place the weapon in the possession of Flatt whom he had left by the roadside while he went to visit his grandmother. This of course was a question for the jury. There was evidence of bad feelings between defendant and the Staffords over a car wreck which he believed was due to the Staffords' fault. The gas can in defendant's truck from which Flatt testified he filled the plastic jug had to be refilled on the weekend following the burning of the Stafford's house. A near neighbor of the Staffords saw defendant drive past, apparently on the way to his grandmother's. Sometime later she heard a loud noise, "maybe an explosion or something real

**914**

loud. Louder than a gunshot." A minute or two after that she saw defendant's truck come back down the road. Shortly after that her husband saw smoke coming from the direction of the Stafford house. They went together to see about it. When they arrived there was fire all over, it looked like it was boiling inside. Defendant denied knowing anything about the fire until the next day although a police officer corroborated Flatt's testimony that, on the night of the fire, he told defendant about the fire when he encountered them on the road and stopped to ask directions to the Stafford house. An arson investigator with the State Fire Marshall's Office investigated the fire. He suspected arson although there was no physical evidence of that fact. He did not make any test for accelerants because there was a total burn-out and it was his opinion any accelerant would have been burned away.

 There was an abundant amount of evidence to corroborate the testimony of Flatt and establish the guilt of defendant to the homicide of the Staffords and to arson as well. The evidence of defendant's guilt fully satisfied the requirements stated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and T.R. A.P. 13(e).

Defendant contends the jury failed to specify the degree of murder which was found in Count 1 and Count 2 of the indictment and therefore their verdict is void.

When the jury returned from their deliberations the following pertinent proceedings occurred:

THE COURT: Mr. Foreman ..., has the jury reached a verdict in the case of State versus Steve Henley?

JURY FOREMAN: We have, sir.

THE COURT: Mr. Foreman ..., I'm going to more or less start at the top and question you about different charges. And I remind you that count one of the indictment charged the defendant with murder in the first degree of Edna Stafford. And there were some lesser included offenses. Murder in the second degree, voluntary manslaughter, and involuntary manslaughter. I'll question

you first as to count one of the indictment, of Edna Stafford. In the matter of murder in the first degree, how does the jury find?

JURY FOREMAN: Guilty.

\* \* \* \* \* \*

THE COURT: The second count of the indictment charges the defendant with the murder in the first degree of Fred Stafford. And the lesser included offenses. How does the jury find in count two of the indictment?

JURY FOREMAN: Guilty.

THE COURT: Ladies and Gentlemen of the jury, you have heard your Foreman announce that this jury has found the defendant Steve Henley guilty in the following counts of the indictment. Count one, to the murder of Edna Stafford. Guilty of first degree murder. Count two of the indictment, murder in the first degree of Fred Stafford, guilty.... Is that the finding of each and every juror, and if it is, please raise your right hand to indicate so.

(Jurors respond)

THE COURT: Thank you, Ladies and Gentlemen.... as you were instructed before, in the event that the defendant was found guilty of first degree murder, it would be your duty, after a sentencing, to go farther and set his punishment....

Defendant argues that T.C.A. § 39–2–203(a) continues the requirement of former T.C.A. § 39–2404 that the jury's verdict must specify the degree of murder of which the defendant is guilty or be held void.

In *State v. Henderson,* 221 Tenn. 480, 427 S.W.2d 834, 836 (1968), the Court stated the rule then in existence:

"Over the long history of this statute [T.C.A. § 39–2404] the Court, without exception, has construed the statute to require the jury by its verdict to specify the degree of murder of which it finds a defendant guilty. As the *Waddle* case states, [*Waddle v. State,* 112 Tenn. 556, 82 S.W. 827 (1903)] it is imperative upon the jury to do so. We do not think it wise to modify these many previous hold-

ings especially in view of the clear mandate of the statute, the language of same having remained unchanged all of these years...."

In 1977 T.C.A. § 39–2404 was completely revised and retitled by Chapter 51, Sec. 2 of the Public Acts of the Legislature. The statute which previously required the jury to ascertain in their verdict whether it was murder in the first or second degree, now provides for the precise manner of sentencing on a first degree murder verdict.

■ Unquestionably the verdict of the jury should contain language which is so clear and certain that its meaning can reasonably be determined. Wharton's Criminal Procedure, 12th Edition, Ch. 34, Verdict, § 577, p. 138. "Since the reception of a verdict is not solely a ministerial as distinct from a judicial act, when the jury return (sic) into court with a verdict, it is not a matter of course to receive it in the form in which it is rendered. It is the duty of the Court ... to look after its form and substance, so far as to prevent an unintelligible, or a doubtful, or an insufficient verdict from passing into the records of the court." See C.J.S.2d, Volume 23A, Verdict, § 388, p. 1042.

When the jury returned to report the verdict in this case the trial judge asked the foreman in the presence of all of them if the jury had reached a verdict against the defendant. Each of them acknowledged they had by their silence. The trial judge then stated to the foreman, in the presence of each of them, "I'll question you first as to count one of the indictment, of Edna Stafford. In the matter of murder in the first degree, how does the jury find?" The response was "guilty" without a protest on the part of any jury member. In reference to the second count the trial judge inquired, "the indictment charges the defendant with the murder in the first degree of Fred Stafford. And the lesser included offenses. How does the jury find in count two of the indictment?" The response was "guilty." Tenn.R.Crim.P. 31(d) provides that when a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll, there is not unanimous concurrence the jury may be directed to retire for further deliberations or may be discharged.

In polling the jury in this case the trial judge again stated, "Ladies and gentlemen of the jury, you have heard your Foreman announce that this jury has found the defendant Steve Henley guilty in the following counts of the indictment. Count one, to the murder of Edna Stafford. Guilty of first degree murder. Count two of the indictment, murder in the first degree of Fred Stafford, guilty ... Is that the finding of each and every juror, and if it is, please raise your right hand to indicate so."

The judge then once more admonished the jury, "Ladies and Gentlemen, as you were instructed before, in the event that the defendant was found guilty of first degree murder, it would be your duty, after a sentencing, (sic) to go further and set his punishment." There was no protest from any member.

■ Standing alone, the verdict as to the second count lends itself to some ambiguity, but in the context of the total record it is clear and unmistakable that the jury had convicted defendant of the first degree murder of each of the victims. We hold, upon the record as we have related it, that the defendant was duly and properly sentenced to be guilty of first degree murder in each of the first two counts of the indictment.

Defendant questions the validity of the murder convictions on counts one and two of the indictment because the court ordered a not-guilty verdict in counts three and four, charging felony murder.

■ At the conclusion of the State's proof the defendant moved to require the State to elect whether it was seeking convictions of common law first degree murder under counts one and two of the indictment or convictions of felony murder as charged in counts three and four. After considerable argument and debate the trial court ultimately ruled that election was not required. In his argument that the State should have been required to make an elec-

tion defendant relies on *State v. Harrington*, 627 S.W.2d 345 (Tenn.1981). This reliance is misplaced. In *Harrington* the defendant was charged in separate counts of the indictment with premeditated murder and with felony murder. The State voluntarily elected to proceed against the appellant under the felony murder count. The defendant protested that this action was taken without his consent contrary to Rule 48(a) of the Tennessee Rules of Criminal Procedure. This Court pointed out that the rule deals only with the dismissal of the charge against a defendant, noting that the State did not dismiss the murder charge, but elected to proceed under the count of the indictment charging the highest degree of murder which conformed with the proof. This, the Court said, was the State's prerogative in any case. The State is not required to elect upon separate charges in the same indictment, although the defendant may demand election between factual occurrences. See Raybin, Tennessee Criminal Practice and Procedure, Sec. 26.82, p. 308; *Burlison v. State*, 501 S.W.2d 801, 804 (Tenn.1973).

 The insistence that the trial judge's announcement of a not-guilty verdict in counts three and four of the indictment had the legal effect of superseding the verdict entered in counts one and two is also without basis. The trial judge's action was at defendant's request and was at most gratuitous. This Court said in *Briggs v. State*, 573 S.W.2d 157, 159 (Tenn.1978), citing from an earlier intermediate court decision, "[t]he settled law of this State is that a special verdict upon a single count of [an] indictment is given the effect of an acquittal upon the other counts to which the jury did not respond ..." Thus, in this case, the jury by failing to respond to the third and fourth counts of the indictment, found the defendant not guilty of felony murder, as specified in the indictment, leaving the conviction solely for common-law premeditated homicide.

It is the defendant's contention that the death penalty cannot stand because, the jury was not instructed that it must return separate punishment verdicts in the case of each of the victims; the jury did not, in count one and in count two, separately reduce to writing the statutory aggravating circumstance required by T.C.A. § 39–2–203(g)(1) and (2); and the aggravating circumstance found by the jury is not the equivalent of the statutory aggravated circumstance required and set forth in T.C.A. § 39–2–203(i)(5).

In reference to the first of these complaints, when the trial judge read his instructions to the jury at the sentencing hearing he began:

"You have reported that you have found the defendant guilty of murder in the first degree. The offense of murder in the first degree is punishable by death by electrocution, or by imprisonment for life. Our statutory law provides that the jury shall fix the punishment, after a separate sentencing hearing, to determine whether the defendant should be sentenced to death or life in prison. Your verdict must be unanimous as to either form of punishment."

At the conclusion of the jury's deliberation at the sentencing hearing the trial judge asked for a separate verdict on each count in the following language:

"... [T]he first guilty verdict was in count one of the indictment, that involved Edna Stafford. How does the jury fix the punishment in Count 1 of the indictment?

Count 2 of the indictment, the defendant was found guilty of murder in the first degree of Fred Stafford. How does the jury fix his punishment?"

 It is clear that the trial judge did not specify in his earlier instructions that separate sentences should be fixed for each conviction. It is equally clear from the transcript of the hearing that the jury did return separate verdicts on each count. This initial oversight on the part of the trial judge certainly did not affect the verdict of the jury, nor did it affect the judgment or result in prejudice to the judicial process. T.R.A.P. 36(b).

Defendant further insists the trial court's failure to furnish the jury with separate forms for count one and count two of

the indictment is a violation of T.C.A. § 39–2–203(g) and thus, voided the death penalty. The statute provides, "if the death penalty is the sentence of the jury, the jury shall: (1) reduce to writing the statutory aggravating circumstance or statutory aggravating circumstances so found; (2) signify that there were no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance or circumstances so found. These findings and verdicts shall be returned to the judge upon a form provided by the court which may appear substantially as follows: ..."

■ In this case the jury was properly instructed on aggravating circumstances by the trial judge. The definitions of heinous, atrocious, cruelty, torture and depravity were properly delivered. They were counseled on mitigating circumstances in accordance with the statute. On the form provided by the court to enable them to reduce to writing the statutory aggravating circumstances found by them the jury responded, "we the jury found the following statutory aggravating circumstances—atrocious, cruel, torture." The form contains the signature of each member of the jury in accordance with the instructions delivered to them by the trial judge. Defendant's complaint is that the jury's finding is less than required by T.C.A. § 39–2–208(i)(5). We are satisfied that the response of the jury is adequate, and that defendant's reference to *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) does not support his complaint. *Godfrey* stands for the principle that a State which authorizes capital punishment has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of the State's responsibility in this regard is to define crimes for which death may be the sentence in a way that obviates standardless sentencing discretion. It is the definitions supplied by the State which must satisfy the constitutional mandate, and not the manner of response of the jury. However, the jury's verdict of whatever nature, should be in language which is clear and

certain as to its meaning and which cannot be mistaken. See *Baldwin v. State,* 213 Tenn. 49, 372 S.W.2d 188, 189 (1963). It is the duty of the trial judge as well as the lawyers, not to influence a jury in rendering a verdict, but to guide and assist them to assure the certainty of their intentions and that the meaning is clear.

It seems likely that the procedure employed by the trial court was inadvertent. There was no objection on the part of the defense when the incident occurred and there is nothing in the statute to indicate that separate reports were required. It is evident that the jury fully understood their responsibility and it was their intent to sentence defendant to death on each count of the indictment as it appears in the judgment of the court. We find any error to be harmless.

However, we consider it appropriate to address the matter to avoid the possibility of reversible error in the future. Defendant has cited a statement from *State v. Groseclose,* 615 S.W.2d 142, 148 (Tenn. 1981) which does not address the issue raised. It does appear to us to be appropriate to define a new policy in cases of this nature:

> "The very essence of the statutory procedure under which the death penalty may be imposed is the requirement that the jurors consider each case separately and individually, and that they consider aggravating and mitigating circumstances in each case. Their decision, of course, is not to be reached in an arbitrary manner, but, on the other hand, the jury is certainly not required to impose the death penalty in every case involving a conviction of murder in the first degree."

■ In future cases, where there is more than one victim, because the aggravating and mitigating circumstances may be different as to each victim, the instructions to the jury should be clear and tailored individually for each count of the charges against the defendant. This rule applies as well to the forms provided by the court for the jury to report the statutory aggravating circumstances found by them

and their verdict on mitigating circumstances in accordance with the mandate of the statute. Separate forms should be provided.

The defendant insists that the death penalty imposed on him is invalid because it is grossly disproportionate to the sentence Flatt received in his separate trial on a guilty plea submission. He concedes that in *State v. Carter,* 714 S.W.2d 241, 251 (Tenn.1986), this Court recognized that a disparity in sentencing may exist where there is clearly a rational basis for the difference in sentences.

 The jury accepted Flatt's testimony that defendant premeditated the homicide of the victims in this case. That he loaded the rifle used in the homicide beforehand and filled a plastic jug with gasoline which was used in the arson. That he forced the Staffords at gunpoint from the roadside up the driveway to their residence where he shot both of them, killing Mr. Stafford and seriously wounding his wife. He then set fire to the residence which brought about the death of the second victim. Flatt admitted participating in these activities but testified he did so only out of fear for his own life. There is no evidence that he planned or instigated the murders. He was sentenced in a separate proceeding and testified for the State at the defendant's trial. There was clearly a rational basis for the difference in sentencing. See *State v. Carter,* supra.

 T.C.A. § 39–2–205 mandates automatic review by this Court in cases where the death penalty is imposed for murder. We have reviewed the record in this case and find that the sentence of death was not imposed in an arbitrary fashion. The dual homicides were committed in a brutal, senseless, wanton fashion and the jury's finding that the murder was atrocious and cruel in that it involved torture was fully supported by the evidence. We further find the evidence supports the jury's finding of the absence of any mitigating circumstances sufficiently substantial to outweigh the aggravating circumstances found. We have considered the nature and circumstances of the crime as well as the nature, character and record of the defendant and find that the sentence is neither excessive nor disproportionate to the penalty imposed in similar cases.

The defendant's convictions of first degree murder in each case and the sentences of death are affirmed. The sentences will be carried out as provided by law on the 1st day of June, 1989, unless otherwise ordered by this Court or by other proper authorities. The sentence for aggravated arson is affirmed. Costs are taxed to defendant.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.

### ON PETITION TO REHEAR

Defendant has filed a respectful Petition to Rehear to which the State has responded by the Court's direction.

Defendant insists T.C.A. § 39–2–203(i)(5) is unconstitutionally vague under the ruling of the United States Supreme Court in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) and that the limiting instructions delivered to the jury by the Court were inadequate.

 This Court has addressed a similar argument in *State v. Gregory Thompson,* 768 S.W.2d 239 (Tenn.1989) and found the statute to be constitutionally sound. In conjunction with the definitions adopted in *State v. Williams,* 690 S.W.2d 517 (Tenn. 1985), the Court held that the instructions in *Thompson* gave the jury sufficient guidance to prevent arbitrary sentencing. We are satisfied that the jury instructions in this case meet the same standards.

The petition to rehear is denied.