IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2001

## STATE OF TENNESSEE v. DEUNDRICK LARAN COBLE

**Direct Appeal from the Circuit Court for Obion County**
**No. 0-187      William B. Acree, Judge**

_____

**No. W2001-00039-CCA-R3-CD - Filed August 30, 2002**

_____

The appellant was convicted of aggravated assault and sentenced to five years in the Tennessee Department of Correction as a standard Range I offender. In this appeal, he raises two issues. First, he maintains that a prior inconsistent statement was improperly used by the prosecution to impeach the testimony of a prosecution witness. Second, he claims the prosecutor made improper remarks during closing argument. We find neither of these alleged errors requires reversal of this case and thus we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

Steve Conley, (on appeal); Bruce and Steve Conley, Union City, Tennessee (at trial), for the appellant, Deundrick Laran Coble.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

As accredited by the jury's verdict, the proof showed that on March 26, 2000, the victim, Marcus Treadwell, was driving his girlfriend's car down an Obion County street at 3:00 a.m. A blue car driven by Jeffrey Ervin pulled up beside Treadwell. The appellant was a passenger in the blue car. Treadwell and the appellant had a brief conversation concerning an altercation between Treadwell and one of the appellant's cousins. The appellant then pulled out a small caliber pistol and fired two or three shots at Treadwell. Ervin and the appellant drove away, and Treadwell, who was uninjured, drove home.

Treadwell's mother convinced him to report the incident to the police. Officer Mike George investigated the case. George inspected the car Treadwell was driving and found two bullet holes in the back seat. George also found a bullet fragment near the car's rear windshield and another fragment on the floorboard. George did not find any physical evidence at the location of the shooting, but he did locate two witnesses who had heard gunfire in the area between 3:00 a.m. and 4:00 a.m. Neither witness called the police.

Jeffrey Ervin testified that he and the appellant were riding around in the early morning hours of March 26, 2000. Ervin was driving and the appellant was a passenger in the vehicle. Ervin initially stated that he did not remember if the pair had stopped to talk to Treadwell. He remembered that the police had picked him up about four days after the shooting, but he could not remember what he had told the officers. At this point, over the objection of the defense, the prosecution was allowed to question Ervin with a statement he had given Officer George.

Under questioning about the statement, Ervin admitted telling George that he, Ervin, and the appellant pulled up near Treadwell's car, and that the appellant and Treadwell spoke. He also admitted telling George that Treadwell had a gun. He denied telling George that the appellant had fired one round at Treadwell in self-defense.

The prosecution recalled Officer George to the stand and he recounted Ervin's original statement to police as follows:

> "He told me he had been out driving around town on the northeast side of Union City with Deundrick Coble, that he, Jeff Ervin, was driving the car, Deundrick Coble was a passenger in the car. As they neared the intersection of Martin Luther King and Taylor, there was a red car in front of them. This red car pulled over to the curb. He stated that he pulled up next to the red car. The red car was occupied by a Marcus Treadwell. He stated that he, Jeff Ervin, being the driver of the blue car, could see Marcus Treadwell cocking a weapon . . . He said at that point in time, he did not see the gun, but he knew he had one and he was cocking it.
>
> He said, "Deundrick Coble came up with a handgun." He described it as a small handgun. He fired one round towards Marcus Treadwell. That he, Jeff, Ervin - the car was running - and he, Jeff Ervin, simply drove off towards Main Street."

At the request of the State, the jury was instructed to consider Ervin's pre-trial statement only for the purpose of assessing his credibility.

The appellant testified on his own behalf. He testified that he did see the victim on the morning of March 26, 2000, but did not fire shots at Treadwell. He testified that he and Ervin did not flash their car lights at the victim, but that the two cars did pull up beside each other. The appellant stated that the conversation ended when Treadwell reached over in his passenger seat and

-2-

put a pistol up on the armrest. The appellant testified that he and Ervin immediately drove off and went home.

## Impeachment With Prior Inconsistent Statement

In his first issue, the appellant claims that the trial court erred in allowing the State to impeach its own witness, Jeffrey Ervin, with his prior inconsistent statement. We respectfully disagree.

Tennessee Rule of Evidence 607 permits the credibility of a witness to be impeached by any party, including the party who called the witness. However, a party may not call a witness to testify solely as a ruse for the purpose of impeaching that witness with a prior inconsistent statement that would be inadmissible as substantive evidence. State v. Jones, 15 S.W.3d 880 (Tenn. Crim. App. 1999).

In State v. Jones, this Court held that the State could impeach its own witness with a prior inconsistent statement where no proof existed that the State had called the witness as a pretext in order to introduce her prior statement. Id. at 892. In that case, the witness had given a statement prior to trial that the defendant had said to get rid of a gun because, "it could be caught up in a murder." Id. at 885. The State, expecting the witness to repeat her prior statement, was allowed to introduce the witness' prior statement after the witness testified that, "the gun could be caught up in something." Id. After introduction of the prior statement, the defendant testified that her trial testimony was accurate, rather than her pre-trial statement. Id.

This Court affirmed the trial court's decision to allow questioning regarding the witness' pre-trial statement because: (1) the witness' trial testimony was inconsistent with her pre-trial statement, (2) defense counsel had failed to notify the State that the witness had repudiated the accuracy of her pre-trial statement, and (3) there was no proof that the prosecutor called the witness as a pretext or ruse to introduce her prior statement. Id. at 892.

Turning to the facts of the instant case, it appears that Ervin first told police that the appellant had fired a small caliber handgun at Treadwell, but that the shooting was in self-defense. At the preliminary hearing in this case, Ervin testified that he could remember only his name, that he had spoken with Officer George, and that he had never told George he had seen the appellant with a gun.

At the hearing on the motion for a new trial, the prosecutor explained that in the interim between the preliminary hearing and the trial, and following discussions involving his parents and the prosecutor, Ervin indicated that at trial he would testify truthfully, i.e., in accordance with his statement given to Officer George. Thus, there is no evidence in this record that the prosecution called Ervin knowing he would repudiate his pre-trial statement to police. Indeed, it appears that the prosecution was misled by Ervin into believing that at trial, Ervin would affirm his pre-trial

statement.[1]  Under the circumstances, there is nothing in the record of this case to indicate that Ervin was called to the stand as a mere ruse to get his pre-trial statement into evidence.  It was, therefore, proper under the circumstances to permit the prosecution to impeach Ervin with his pre-trial statement to police.

## CLOSING ARGUMENT

During closing arguments, the defense pointed out to the jury that the victim in this case, Mr. Treadwell, had showed little interest in prosecuting the case.  Counsel noted that Treadwell had been cajoled into reporting the case by his girlfriend and mother, and that he was not even present in the courtroom to see the outcome of the proceedings.  Presumably, this was an attempt to persuade the jury that if the alleged victim had no interest in convicting the appellant, neither should the jury.

> In response to this line of argument, the prosecutor during his final argument stated: "If you believe beyond a reasonable doubt that Deundrick Coble fired these shots at Marcus Treadwell and you decide to just let it go because Mr. Treadwell is not here, then you're not fulfilling your oath, and you're putting Lavell Sanders, you're putting Clarence Davis, and you're putting everybody else that lives in that community at risk . . .
>
> You're putting everybody at risk, because you're sending the message out there that it's okay to shoot at people, that if the person being shot at really doesn't get that upset about it, we're not going to get upset about it . . . What message are you going to send to him [the victim]?  "I'll take care of it myself.  Get me a gun and I'll shoot Deundrick Coble."

Objections to these remarks were overruled by the trial court.  The appellant complains that these comments by the prosecutor were improper because they are irrelevant to the question of guilt or innocence, but are rather an appeal to the jury to deliver a verdict that will generally deter crime.

A prosecutor should avoid appealing to the jury to concern itself with general deterrence of crime in the community.  State v. Bigbee, 885 S.W.2d 797, 809 (Tenn. 1994); State v. Henley, 774 S.W.2d 908, 913 (Tenn. 1989).  Nevertheless, we are convinced that these remarks did not affect the jury's verdict.  The comments are a direct response to the defense's argument concerning Treadwell's lack of interest in the case, and they do not appear to be a product of an improper attempt to improperly influence the jury.  Moreover, the State's case against the appellant was fairly strong, and there does not appear to be any other errors in the record that exacerbate the effect of the remarks.  Finally, although tried for attempted first degree murder, the appellant was convicted of the lesser offense of aggravated assault.  Under the circumstances, we are of the opinion that the

---

[1]This case is factually distinguishable from Mays v. State, 495 S.W.2d 833 (Tenn. Crim. App. 1972), cited by the appellant.  In Mays, the prosecution knew the witnesses had repudiated their pre-trial statements and knew they would continue to do so when called to the stand at trial.

prosecutor's comments did not affect the verdict to the prejudice of the appellant, and therefore, no reversal is required. See State v. Cauthern, 967 S.W.2d 726, 738 (Tenn. 1998).

CONCLUSION

In light of the foregoing, the judgment of the trial court is AFFIRMED.

          _____

          JERRY L. SMITH, JUDGE