IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2026

**STATE OF TENNESSEE v. DANTERRIO DEVONTA POPLAR**

**Appeal from the Circuit Court for Hardeman County**
**No. 2023-CR-151     J. Weber McCraw, Judge**

_____

**No. W2025-00108-CCA-R3-CD**

_____

A Hardeman County jury convicted the Defendant, Danterrio Devonta Poplar, of evading arrest in a motor vehicle while creating a risk of death or injury to others.  The trial court imposed a three-year sentence, with 75 days of incarceration and the balance to be served on supervised probation.  On appeal, the Defendant argues that the prosecutor improperly vouched for the credibility of law enforcement witnesses during voir dire and rebuttal closing argument and that the trial court should have given a curative instruction following the prosecutor's statement.  Upon our review, we respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

Terrell L. Tooten (at trial and on appeal), Dee Shawn Peoples (at trial), Memphis, Tennessee, for the appellant, Danterrio Devonta Poplar.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Mark Davidson, District Attorney General; and Joe VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A. THE PURSUIT

On the night of June 11, 2022, Hardeman County Sheriff's Office Deputy Justin Mashburn and Investigator Chadrikus Wooden were parked in separate vehicles near an intersection when they observed a silver Infiniti pass them. As the vehicle passed, the officers could see that the driver, the Defendant, was not wearing a seatbelt. The officers began following the vehicle and noticed that the tag lights were not working. The Defendant then accelerated, and Deputy Mashburn activated his emergency lights and siren. Investigator Wooden joined the pursuit.

The officers testified that during the pursuit, the Defendant had opportunities to stop safely but did not do so. The Defendant crossed a double yellow line to pass a vehicle, causing another oncoming vehicle to leave the roadway. Deputy Mashburn was able to catch up with the Defendant, who was traveling about seventy miles per hour.

The pursuit ended near an intersection when the Defendant attempted to turn right but continued through the intersection, striking a stop sign, a handrail near a staircase, and a light pole. When officers approached the vehicle, they found two children—one eight years old and the other one year old—in the back seat of the vehicle, unrestrained, and called for medical assistance. After his arrest, the Defendant spontaneously stated, "I knew y'all was going to f*** with me because my license is suspended and my tag light."

### B. THE TRIAL

On September 6, 2023, a Hardeman County grand jury charged the Defendant with felony evading arrest in a motor vehicle while creating a risk of death or injury to others. The case proceeded to a jury trial a year later.

The State called Deputy Mashburn and Investigator Wooden to testify to the facts described above. It also introduced a video that Deputy Mashburn had prepared in advance of trial, depicting the route the officers drove during the pursuit. Testifying in his own defense, the Defendant denied attempting to flee and claimed that his brakes had failed.

He also called two witnesses and introduced photographs in support of the brake-failure account.

During the trial, the prosecutor made the following statements that form the basis of this appeal.

### 1. The Voir Dire Statement

During voir dire, the prosecutor addressed the two officers who would serve as the State's witnesses. He told the venire:

> I've told you who my two witnesses are going to be today and let me just start out saying what I think doesn't matter. I know these guys. I trust them but y'all don't know them and you're going to be asked to judge their credibility. You're going to have to listen to what they say and you're going to say is that a credible witness.

Defense counsel did not object to this statement.

### 2. The "Pretty Defensive" Statement

After the close of proof, and during closing argument, defense counsel challenged the credibility of Deputy Mashburn and Investigator Wooden. During the State's rebuttal closing argument, the prosecutor responded in part as follows:

> And, [defense counsel] says, oh, there's reasonable doubt. No. Remember we talked about the difference in reasonable doubt and no doubt? He's wanting you to find a no doubt standard, not a reasonable doubt standard. I'm the Assistant District Attorney. I work with the police every day so yeah, I'm pretty defensive of them.

Defense counsel objected and moved for a mistrial, arguing that the prosecutor had vouched for the officers' credibility. The trial court denied the motion. When the court asked whether counsel had "[a]nything else for the record," defense counsel responded, "No." Defense counsel did not request a curative instruction.

### 3. The "My Cops" Statement

Continuing the rebuttal argument, the prosecutor discussed photographs that defense counsel had introduced. In so doing, the prosecutor stated: "I can't imagine anybody being much more thorough than [defense counsel] was with my cops." Defense counsel did not object to this statement.

### 4. The Speedometer Statement

Finally, in response to defense counsel's attack on the officers' credibility regarding the vehicle's speed, the prosecutor stated:

> There's no way and, again, [defense counsel] tries to make you question the credibility of the state's witnesses. You've seen the video. They've described where things happened at what point. Did he have to accelerate to go fast to catch up with somebody that got up to seventy? Sure did—sure did. I'd love to tell you what the speedometer reads on that Infiniti but that wasn't introduced in proof so I'm going to keep my mouth shut, but, yes, when he got up to that speed the officers had to go faster to catch up and they did and when you're pacing someone, they have to know you're behind with sirens and blue lights going at night.

Defense counsel did not object to this statement.

### C. VERDICT, SENTENCING, AND APPEAL

Before deliberations, the trial court instructed the jury that statements by the lawyers were not evidence, that unsupported statements should be disregarded, and that the jury was the exclusive judge of the facts. The trial court also instructed the jury on assessing witness credibility.

The jury convicted the Defendant as charged. The trial court subsequently sentenced the Defendant as a Range I, standard offender to three years, with seventy-five days of incarceration and the balance to be served on supervised probation.

The Defendant filed a timely motion for a new trial, arguing that the trial court erred by failing to declare a mistrial when the State vouched for the credibility of its witnesses. The trial court denied the motion by a written order entered on December 11, 2024. This appeal followed.

## STANDARD OF APPELLATE REVIEW

For each issue on appeal, a reviewing court must first determine the appropriate standard of review. *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The sole issue in this case is whether the State engaged in improper closing argument during the trial. Our supreme court has recognized that "[t]he standard of review in determining whether counsel was allowed too much latitude during closing argument is abuse of discretion." *State v. Hall*, 976 S.W.2d 121, 157 (Tenn. 1998). "Generally, an abuse of discretionary authority occurs only when the trial court applies an incorrect legal standard or reaches a decision which is against logic and reason." *State v. Odom*, 336 S.W.3d 541, 559-60 (Tenn. 2011).

## ANALYSIS

In this appeal, the Defendant argues that the prosecutor improperly vouched for the credibility of the law enforcement witnesses by making four statements—one during voir dire and three during rebuttal closing argument—that deprived him of a fair trial. He further contends that the trial court should have given a curative instruction following the preserved statement.

The State responds that the preserved statement did not amount to vouching and, in any event, that the Defendant has not shown prejudice. As to the three unpreserved statements, the State contends that the Defendant cannot satisfy the requirements of the plain error doctrine. We agree with the State and conclude that the Defendant is not entitled to relief.

### A.    CLOSING ARGUMENTS

"The basic purpose of closing argument is to clarify the issues that must be resolved in a case." *State v. Sexton*, 368 S.W.3d 371, 418 (Tenn. 2012) (citing *State v. Banks*, 271 S.W.3d 90, 130 (Tenn. 2008)). Tennessee courts have consistently recognized closing

argument as "a valuable privilege that should not be unduly restricted," *Enix*, 653 S.W.3d at 701, and have afforded counsel wide latitude to argue the evidence, challenge the opposing party's theory, and draw reasonable inferences from the proof.

That latitude, however, is bounded by the prosecutor's fundamental obligations as a minister of justice. Prosecutors "must not lose sight of their duty to seek justice impartially and their obligation to see to it that the defendant receives a fair trial." *State v. Hawkins*, 519 S.W.3d 1, 47-48 (Tenn. 2017) (citation and internal quotation marks omitted), *overruled on other grounds by Enix*, 653 S.W.3d at 701. While a prosecutor may "strike hard blows," he is "not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Within those boundaries, the State's closing argument should be "temperate," "based on the evidence introduced at trial," and "pertinent to the issues in the case." *Banks*, 271 S.W.3d at 131 (citing *State v. Middlebrooks*, 995 S.W.2d 550, 557 (Tenn. 1999); *Russell v. State*, 532 S.W.2d 268, 271 (Tenn. 1976)). The State "must refrain from argument designed to inflame the jury and should restrict its commentary to matters in evidence or issues at trial." *State v. Hill*, 333 S.W.3d 106, 131 (Tenn. Crim. App. 2010). The prosecution is likewise "not permitted to reflect unfavorably upon defense counsel or the trial tactics employed during the course of the trial." *State v. Gann*, 251 S.W.3d 446, 460 (Tenn. Crim. App. 2007) (citation omitted). And "[i]t is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003); *see State v. Henley*, 774 S.W.2d 908, 911 (Tenn. 1989) ("any intentional effort to influence the members of a jury by expressions of personal opinion cannot be condoned"); *see also* Tenn. Sup. Ct. R. 8, § 3.4(e)(3) ("A lawyer shall not . . . in trial . . . state a personal opinion as to the justness of a cause, the credibility of a witness, . . . or the guilt or innocence of an accused.").

Tennessee courts have recognized five categories of argument that are improper: (1) intentionally misstating the evidence or misleading the jury as to the inferences it may draw; (2) expressing personal beliefs or opinions as to the truth or falsity of any testimony or the guilt of the defendant; (3) inflaming or attempting to inflame the passions or prejudices of the jury; (4) injecting issues broader than the guilt or innocence of the accused; and (5) arguing or referring to facts outside the record that are not matters of common knowledge. *State v. Jones*, 568 S.W.3d 101, 145 (Tenn. 2019) (appendix) (citing *Goltz*, 111 S.W.3d at 6).

With this framework in mind, we turn first to the threshold question of which of the Defendant's four challenged statements are properly preserved for appellate review. The answer to that question determines both the level of review and the scope of the analysis that follows.

## B.    PRESERVATION OF DEFENDANT'S ISSUES

Whether an issue as to an allegedly improper closing argument is subject to plenary review depends on whether and how the Defendant preserved the claim at trial. To preserve an issue for appeal, a party must first raise a timely and specific objection in the trial court. The party must then raise that same issue in a timely, written motion for a new trial. A failure to satisfy either requirement results in a waiver of plenary review of that issue on appeal. *See State v. Ruiz*, 716 S.W.3d 439, 453 (Tenn. Crim. App. 2024). These principles apply to claims that the State made improper closing arguments. *See Enix*, 653 S.W.3d at 700.

In this case, the Defendant objected to the "pretty defensive" statement made by the prosecutor during the State's rebuttal closing argument. The Defendant also raised this issue in his motion for a new trial. As such, we conclude that the Defendant has preserved a challenge to this statement for plenary review on appeal. *See id.* at 700-01.

However, the Defendant did not raise a contemporaneous objection to the three remaining statements he now challenges on appeal: the voir dire statement, the "my cops" statement, or the speedometer statement. Because the Defendant failed to give the trial court an opportunity to address those statements when they were made, plenary review is unavailable. *See Enix*, 653 S.W.3d at 700-01. Consequently, the Defendant may seek relief for these challenges, if at all, only under the plain error doctrine. *See id.*

We have recognized that "a party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal." *Ruiz*, 716 S.W.3d at 453 (citation and internal quotation marks omitted). Indeed, because the defendant bears the burden of showing an entitlement to plain error relief, his or her "failure to request this relief necessarily weighs against any such consideration on our own." *State v. Morgan*, 727 S.W.3d 182, 198 (Tenn. Crim. App. 2025).

In this case, the Defendant acknowledges that he has waived plenary review of these three statements, and he asks in his principal brief that this court consider these statements under the plain error doctrine. Accordingly, we conclude that plain error review is appropriate to consider the Defendant's remaining challenges. *See State v. Pewitte*, __ S.W.3d __, No. W2024-01128-CCA-R3-CD, 2025 WL 3510902, at *4 (Tenn. Crim. App. Dec. 8, 2025) (conducting plain error review when requested and briefed by the party in its principal brief), *perm. app. denied* (Tenn. May 21, 2026).

With the applicable standards established, we address the preserved statement first, then turn to the three unpreserved statements under the plain error framework.

### 1. Preserved Issue:  The "Pretty Defensive" Statement

The Defendant argues that the prosecutor improperly vouched for the officers' credibility when, during rebuttal, he stated that he worked with police every day and was "pretty defensive" of them. He also argues that the trial court should have given a curative instruction following that statement.[1]

The State responds that the statement did not amount to vouching and that the Defendant abandoned his mistrial argument on appeal. It also asserts that the Defendant is not entitled to relief on the curative instruction claim because he never requested one in the trial court. We agree with the State.

Prosecutors should avoid injecting their working relationships with law-enforcement witnesses into the closing argument. The credibility of a witness is for the jury to determine, and a prosecutor's working relationship with a witness is not a substitute for proof. *See Goltz*, 111 S.W.3d at 6. Particularly where credibility is contested, statements referencing the prosecutor's routine work with police can invite the concern that the prosecutor is asking the jury to credit the witnesses because of the prosecutor's own experience or status. *See id.* The prohibition on vouching exists because a prosecutor's

---

[1] The Defendant moved for a mistrial at trial based on the "pretty defensive" statement, and the trial court denied the motion. On appeal, however, the Defendant does not include the denial of the mistrial motion in his statement of the issue, and he makes no argument in support of it in his brief. Although the Defendant references the mistrial motion in his statement of facts, a factual recitation of trial proceedings does not preserve an issue for appellate review. *See* Tenn. R. App. P. 13(b); Tenn. R. App. P. 27(a)(4), (7). Accordingly, we conclude that any claim that the trial court erred in denying the mistrial motion is not presented, and we do not address it further.

personal assurances of credibility function as "unsworn, unchecked testimony" and tend to exploit the influence of the prosecutor's office. *Id.*

Nevertheless, whether a statement crosses that line is a contextual inquiry that depends on the specific words used. *See State v. Oliver*, No. E2023-01623-CCA-R3-CD, 2025 WL 1014382, at *13 (Tenn. Crim. App. Apr. 4, 2025), *perm. app. denied* (Tenn. Sept. 10, 2025). The question before us is not whether the "pretty defensive" statement was well-advised. It is whether the statement constituted impermissible vouching. Viewed in context, the prosecutor did not expressly tell the jury that the officers were truthful, that he knew them to be truthful, or that the jury should believe them because of his personal knowledge. Rather, immediately after defense counsel attacked the officers' credibility, the prosecutor stated that he worked with police every day and was "pretty defensive of them." Although inartful, the comment explained the prosecutor's tone in responding to the defense argument. It was not a direct assurance that the officers testified truthfully.

That distinction is significant. In *Goltz*, this court found reversible error when the prosecutor stated that he was "100 percent confident" that the defendant had mailed a letter, that he would "bet [his] life on it," and that he "knew for a fact" that a witness was honest. *Goltz*, 111 S.W.3d at 6-7. Those were express, unambiguous assurances of personal knowledge and witness veracity. *Cf. id.*

The "pretty defensive" statement here contains none of those characteristics. The prosecutor did not tell the jury that he knew the officers were honest. He did not say that he had personal knowledge confirming their testimony. He did not suggest that information outside the record supported their account. And he did not ask the jury to credit the officers because of his relationship with them.

Instead, viewed in context, the statement explained an emotional tone in the course of responding to a credibility attack—an argument predicated on the evidence and the parties' positions at trial rather than on the prosecutor's personal belief in the witnesses' truthfulness. *See State v. Butler*, No. M2015-00596-CCA-R3-CD, 2016 WL 837409, at *4-5 (Tenn. Crim. App. Mar. 4, 2016) (holding that the prosecutor's statements about the witnesses' motives and credibility were not improper personal opinion because they were predicated on evidence at trial and were a natural response to the defendant's credibility attack), *perm. app. denied* (Tenn. June 23, 2016). We conclude that the statement did not constitute impermissible vouching.

The Defendant also argues that the trial court should have given a curative instruction following the statement. We respectfully disagree. After the trial court denied the mistrial motion and asked whether counsel had anything else to add, defense counsel answered, "No." The Defendant did not request a curative instruction. Having declined the trial court's invitation to seek additional relief, the Defendant cannot now fault the court for failing to give an instruction he never requested. *See State v. Bishop*, No. M2015-00314-CCA-R3-CD, 2016 WL 7324307, at *9-10 (Tenn. Crim. App. Dec. 16, 2016) (concluding no reversible error where no curative instruction was requested and the trial court's jury instructions adequately addressed witness credibility), *no perm. app. filed*.

In any event, the trial court instructed the jury that counsel's statements and arguments were not evidence, that unsupported statements should be disregarded, and that the jury was the exclusive judge of the facts and of witness credibility. We presume that the jury followed these instructions. *See Gann*, 251 S.W.3d at 463. Accordingly, we conclude that the Defendant is not entitled to relief on this issue.

## 2. Unpreserved Issues: Plain Error Review

As we recognized above, the Defendant's challenges to the three remaining statements may be reviewed, if at all, under the standards governing plain error review. Our supreme court has recognized that "[u]nlike plenary review, which applies to all claims of error that are properly preserved, plain error review is limited to those errors which satisfy five criteria." *State v. Vance*, 596 S.W.3d 229, 254 (Tenn. 2020). These criteria are as follows:

(a)    the record must clearly establish what occurred in the trial court;

(b)    a clear and unequivocal rule of law must have been breached;

(c)    a substantial right of the accused must have been adversely affected;

(d)    the accused did not waive the issue for tactical reasons; and

(e)    consideration of the error is "necessary to do substantial justice."

*See, e.g.*, *State v. Jones*, 589 S.W.3d 747, 762 (Tenn. 2019). The defendant bears the burden of establishing all five factors. *State v. Linville*, 647 S.W.3d 344, 354 (Tenn. 2022). An appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied." *State v. Reynolds*, 635 S.W.3d 893, 931 (Tenn. 2021).

Before a defendant may obtain plain-error relief, the defendant must demonstrate that consideration of the alleged error is "necessary to do substantial justice." *See, e.g.*, *Jones*, 589 S.W.3d at 762. This requirement limits relief to errors that are "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). Put differently, the error must be "of such a great magnitude that it probably changed the outcome of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In establishing this factor, the Defendant bears a significant burden: he must show a "significant probability that the jury would have acquitted the Defendant" had the alleged error not occurred. *Vance*, 596 S.W.3d at 256 (emphasis added).

We apply this framework to each of the remaining unpreserved statements in turn.

### a.     The Voir Dire Statement

The Defendant first challenges the prosecutor's voir dire statement that he "know[s] these guys" and "trust[s] them." He argues that, by telling prospective jurors that he personally knew and trusted the officers before trial began, the prosecutor improperly vouched for their credibility. The State responds that the Defendant is not entitled to plain error relief because defense counsel admitted at the motion for a new trial hearing that he chose not to object in order to keep the proceedings moving forward. We agree with the State.

To establish a basis for plain error relief, the Defendant must show that his failure to object was not the result of a tactical or trial decision. *See Pewitte*, __ S.W.3d __, 2025 WL 3510902, at *6. The fourth factor bars plain error relief when counsel's silence reflects a deliberate choice rather than inadvertence, oversight, or neglect. *See id.* Relief under the plain error doctrine is unavailable when a defendant's failure to object results from a trial choice that fits within counsel's broader defense strategy. *Id.* (citing *State v. Walker*, 910 S.W.2d 381, 400 (Tenn. 1995) (Anderson, C.J., concurring)). As *Pewitte* explains, this

limitation reflects the principle that plain error review functions as a corrective doctrine, not a strategic safeguard. "Plain error review ends where trial strategy begins." *Id.*

The inference of a strategic choice arises most directly when counsel admits to a deliberate course of action. *See id.* at *7. Here, the record contains just such an admission. At the motion for new trial hearing, defense counsel explained that he chose not to object to the voir dire statement because he "didn't want to delay anything" and wanted the case "to move forward." That explanation is not a description of oversight or neglect. It is a description of a choice—counsel weighed the option of objecting, decided against it, and articulated why. Such deliberate silence falls squarely within the category of conduct that bars relief under the fourth factor. *See Pewitte*, __ S.W.3d __, 2025 WL 3510902, at *7; *see also State v. Smith*, 24 S.W.3d 274, 283-84 (Tenn. 2000).

Because the record affirmatively establishes that the absence of an objection was a deliberate trial choice, the Defendant cannot satisfy the fourth plain error factor. An appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied." *Reynolds*, 635 S.W.3d at 931. Accordingly, the Defendant is not entitled to relief based on the voir dire statement.

### b.      The "My Cops" and Speedometer Statements

The Defendant next challenges two additional statements from the rebuttal closing argument. First, he asserts that the prosecutor vouched for the officers' credibility when he referred to Deputy Mashburn and Investigator Wooden as "my cops." Second, he argues that the prosecutor implied he possessed information outside the record about the Defendant's speed when he stated that he would "love to tell" the jury what the speedometer read but would "keep [his] mouth shut" because that information was not in proof.

The State responds that neither statement constituted vouching. It asserts that the "my cops" remark merely reflected that the officers were the State's witnesses, and the speedometer remark acknowledged a gap in the proof rather than asserting facts outside the record. The State further argues that, even if either remark was improper, the trial court's instructions to the jury cured any potential prejudice.

Prosecutors must avoid language that suggests personal alignment with law-enforcement witnesses. *See Goltz*, 111 S.W.3d at 6. And counsel must confine argument

to evidence introduced at trial and the reasonable inferences that may be drawn from it. *See Middlebrooks*, 995 S.W.2d at 557. As to the "my cops" remark, it was not a direct personal assurance that the officers testified truthfully. The prosecutor made it while arguing that defense counsel's cross-examination had failed to establish that the brake-repair photographs depicted the same vehicle or showed when any repairs were made. As to the speedometer, the prosecutor immediately acknowledged that the reading "wasn't introduced in proof" and returned to the evidence already before the jury. Neither remark expressly told the jury that the officers were credible because the prosecutor personally believed them or because he possessed facts outside the record.

However, even assuming without deciding that either remark crossed the line into improper argument, the Defendant has not established that consideration of the alleged error is "necessary to do substantial justice." *See, e.g.*, *Jones*, 589 S.W.3d at 762. This factor limits relief to errors "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding." *Page*, 184 S.W.3d at 231; *see also Pewitte*, __ S.W.3d __, 2025 WL 3510902, at *9. The alleged error must be "of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642. The Defendant must show a "significant probability that the jury would have acquitted" him had the challenged remarks not been made. *Vance*, 596 S.W.3d at 256 (emphasis added). He has not made that showing.

The trial court instructed the jury that the statements and arguments of counsel were not evidence, that unsupported statements should be disregarded, and that the jury alone was responsible for judging witness credibility. Moreover, the challenged remarks were brief, occurred in the context of responding to a credibility attack on the State's witnesses, and did not expressly ask the jury to decide the case based on the prosecutor's personal belief rather than the proof.

More importantly, the State's evidence of guilt was substantial. The State presented evidence that the Defendant accelerated after the officers activated their emergency equipment. He also failed to stop despite multiple opportunities to pull safely to the roadside, crossed a double yellow line to pass another vehicle, caused an oncoming vehicle to leave the roadway, and ultimately crashed through an intersection.

The jury also heard that, after the crash, the Defendant spontaneously told the officers that he knew they were going to "f*** with" him because his license was suspended and his tag light was out. That statement was powerful proof that the Defendant knew he was being pursued and chose not to stop. On this record, there is no significant

probability that the jury would have acquitted the Defendant had the disputed remarks not been made. *See Vance*, 596 S.W.3d at 256.

Because the Defendant has not shown that consideration of the alleged error is necessary to do substantial justice, this court need not address the remaining plain error factors. *See Reynolds*, 635 S.W.3d at 931. He is not entitled to plain error relief as to either statement.

## CONCLUSION

In summary, we hold that the Defendant is not entitled to relief based on the prosecutor's statement that he worked with police every day and was "pretty defensive" of them. We also hold that the Defendant is not entitled to plain error relief based on the prosecutor's statements during voir dire and rebuttal closing argument. Accordingly, we respectfully affirm the judgment of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE