# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 13, 2010

## STATE OF TENNESSEE v. STACY LEE FLEMING

**Direct Appeal from the Circuit Court for Tipton County**
**No. 6115     Joseph H. Walker, III Judge**

---

**No. W2009-02192-CCA-R3-CD   -   Filed March 28, 2011**

---

The Defendant-Appellant, Stacy Lee Fleming, was convicted by a Tipton County jury of delivery of more than 0.5 grams of cocaine, a Class B felony. He was sentenced as a career offender to thirty years in the Tennessee Department of Correction. On appeal, Fleming claims: (1) the insufficiency of the evidence; (2) the trial court abused its discretion by restricting the cross-examination of a State's witness; (3) the State committed prosecutorial misconduct in its closing argument; and (4) the trial court erred by sentencing Fleming as a career offender. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Blake D. Ballin and Richard S. Townley, Memphis, Tennessee, for the Defendant-Appellant, Stacy Lee Fleming.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; D. Michael Dunavant, Attorney General; and P. Neal Oldham, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial**. This case stems from an undercover drug purchase by two informants, Sean and Samantha Newman, and John Thompson, Director of the 25th Judicial District Drug Task Force. The proof at trial showed that, on the night of December 1, 2007, the confidential informants met with Director Thompson and arranged to make a drug purchase. They originally planned to buy drugs from a particular individual, not Fleming, at a gas station. All three of them got into Newman's vehicle and went to the gas station. Newman

was the driver, Samantha[1] rode in the front passenger seat, and Director Thompson, dressed in plain clothes, sat in the back seat.

Newman testified that they arrived at the gas station and Samantha immediately recognized Fleming in a parked vehicle. Newman said Fleming was in the driver's seat and had a passenger. The passenger got out of the vehicle and walked into the store. Newman said he pulled to the right of Fleming's vehicle and began a conversation. Newman asked Fleming if he had any Xanax bars. Fleming provided a non-responsive answer. Newman then asked, "'What you got on you?'" Fleming held up a bag containing what appeared to be cocaine. He then offered to sell the cocaine for fifty dollars.

Newman asked Director Thompson if he wanted to buy the cocaine. Director Thompson told Newman to make the purchase and he gave Newman fifty dollars. Newman said Fleming asked about the passenger in the back seat, referring to Director Thompson. Newman told Fleming that Director Thompson's name was "Little Darrell." Newman testified that he gave Fleming fifty dollars in exchange for a bag of cocaine. Newman then returned to his vehicle and handed the cocaine to Director Thompson. Newman said Fleming was alone in his vehicle when the transaction occurred.

Newman admitted that he pled guilty to two counts of submitting worthless checks, two counts of retaliation for past actions, five counts of forgery, one count of theft over a thousand dollars, and one count of failing to make a court appearance. He pled guilty to these offenses in July of 2009. He denied, however, receiving a plea deal in those cases or receiving any leniency in criminal proceedings based on his work as a confidential informant. He claimed he entered a "blind plea," in which the trial court decided his sentence. On cross-examination, Newman testified that he was not currently in prison. He said he was serving a probationary sentence of four and a half years. Newman acknowledged that he was paid for testifying in court and having previously worked as a confidential informant.

Samantha testified and substantially corroborated Newman's testimony. In addition, she explained that she had known Fleming for several years before the drug purchase. She acknowledged that she was also being paid to testify and that she had pending charges in Tipton County.

Director Thompson testified and further corroborated the testimony of the confidential informants. He additionally testified that they did not use a wire or video equipment that night. At the gas station, Director Thompson noticed Fleming was in the driver's seat and

---

[1] Because both confidential informants share the same last name, we will refer to Samantha Newman by her first name only. We intend no disrespect in doing so.

another individual was in the passenger's seat. The passenger got out of the vehicle and went into the store. Director Thompson said Newman pulled up next to Fleming's vehicle and began a conversation. Fleming asked about the identity of Director Thompson. Newman referred to him as "Little Darrell." Director Thompson said Newman asked Fleming if he had any "ladders," meaning Xanax. Fleming gave a non-responsive answer. He then held up a bag containing a white substance and said, "'Fifty.'" Director Thompson said Newman asked him whether to make the purchase. Director Thompson told Newman to buy the cocaine and handed him fifty dollars. Newman then got out of his vehicle, went to the passenger's window of Fleming's vehicle, and conducted the transaction. Director Thompson said Newman immediately returned to his vehicle and handed him the bag of cocaine. Director Thompson testified that the bag remained in his custody until he gave it to Investigator Robbins.

Agent Erica Moody Katherine, a forensic scientist for the Drug Identification Unit of the Tennessee Bureau of Investigation and an expert in drug identification, examined a rock-like substance which she received from the Atoka Police Department. The subject name was Stacy Fleming. She found that the substance contained 0.55 grams of cocaine. Agent Katherine said this measurement had a standard deviation of 0.03 grams. On cross-examination, Agent Katherine acknowledged that the weight of a substance could be affected by outside factors.

Randall Robbins, an investigator with the Drug Task Force of the Atoka Police Department, testified that the confidential informants involved in this case were each paid fifty dollars for their services. Investigator Robbins testified that on December 1, 2007, he received contraband from Director John Thompson. Investigator Robbins placed the contraband in a plastic bag and filed a request for examination with the crime lab for the Tennessee Bureau of Investigation. He put the contraband in a safe at the Atoka Police Department so that Investigator Christopher Ellwood could send it to the crime lab the following morning. Investigator Robbins said he was not at the scene of the drug purchase.

On cross-examination, Investigator Robbins acknowledged that many confidential informants have drug problems, criminal records, or face pending charges. He said Newman was under investigation for several offenses at the time he served as a confidential informant. Investigator Robbins acknowledged that Newman was subsequently convicted of multiple felonies. Investigator Robbins said he spoke with the district attorney's office about Newman's work as a confidential informant.

Investigator Christopher Ellwood testified he transported the contraband from the Atoka Police Department to the crime lab for the Tennessee Bureau of Investigation.

Mary Payne ("Payne"), a friend of Fleming's, testified that she, and her husband, Joshua Payne ("Joshua"), were with Fleming on the night of the offense. They drove to Memphis in Fleming's vehicle to buy cocaine. Payne said she paid fifty dollars for half a gram. The dealer weighed the cocaine before the purchase. Payne testified that on the drive home, they ingested cocaine. She said they sniffed the cocaine off their car keys, which they dipped into the bag. Payne stated, "I know I did probably about three keys . . . ." Upon returning to Tipton County, they stopped at a gas station to buy beer and cigarettes. Payne went into the store by herself. Fleming and Joshua remained in the vehicle. They were upset when she returned. She stated, "Well, my husband and [Fleming] were pretty upset because [Newman] had come up to the car and they were keying the powder and he had snatched it from them and threw the money in the car." Payne did not observe these events. She said Fleming gave her fifty dollars when she got in the vehicle. Payne testified that at the time, she was under the influence of wine, cocaine, and marijuana. She said her husband and Fleming were also under the influence while at the gas station.

Fleming testified that he was with Payne and Joshua on the night of the offense. They drank a few glasses of wine before driving to Memphis to purchase cocaine. Fleming said Payne purchased half a gram for fifty dollars. They started using the cocaine on the drive home. Fleming testified that they stopped at a gas station to get beer and cigarettes. He parked in the front of the store and Payne went inside. Fleming noticed that Newman was parked behind the gas pump. Fleming said he had known Newman since elementary school and that they were friends. He claimed they had done drugs together in the past. Fleming said Newman once told him that he was a confidential informant. He testified that at the gas station, Newman got out of his vehicle and started walking towards him. Newman went to the driver's side window and asked Fleming if he could get fifty dollars worth of cocaine. Fleming told Newman that he did not have fifty dollars worth; however, he offered to give Newman a line of cocaine. Joshua was in possession of the bag of cocaine. Fleming said Newman stuck his head in the window and snatched the bag from Joshua's hand. Newman ran back to his vehicle and handed the bag to somebody inside. Newman came back to Fleming's vehicle and threw fifty dollars inside. Newman then returned to his vehicle and drove away. Fleming estimated that the stolen bag contained only 0.3 grams of cocaine.

Following the testimony at trial, Fleming was convicted of delivering more than 0.5 grams of cocaine, a Schedule II controlled substance. The trial court found that he qualified as a career offender based on four prior Class B felonies. Fleming was sentenced to thirty years in the Tennessee Department of Correction. He was also assessed a $2,500 fine.

Fleming appealed his conviction by filing a motion for new trial, which was denied.[2] He filed a timely notice of appeal.

## ANALYSIS

**I.  Sufficiency of the Evidence**.  Fleming claims the evidence did not support his conviction for delivery of more than 0.5 grams of cocaine.  He admits to possessing cocaine; however, he argues that the State failed to prove that he knowingly delivered cocaine. Fleming also alleges that the evidence did not prove that the amount of cocaine was more than 0.5 grams.  In response, the State argues that a rational juror could have found that the elements of the offense were met.  Upon review, we agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence.  State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."  The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two.  State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).  The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence.  State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence."  State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the

---

[2]The motion for new trial was filed before the entry of the judgment.  The State did not raise this issue on appeal and it has not shown prejudice.  Therefore, we will address the merits of Fleming's appeal. See State v. Siliski, 238 S.W.3d 338, 374 (Tenn. Crim. App. 2007).

theory of the State." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

Fleming was convicted of delivering more than 0.5 grams of cocaine. This offense is codified under Tennessee Code Annotated section 39-17-417(a)(2), which states: "It is an offense for a defendant to knowingly . . . [d]eliver a controlled substance[.]" The Tennessee Code defines "delivery" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship[.]" T.C.A. § 39-17-402(6) (2007). Cocaine is a controlled substance, and the delivery of more than 0.5 grams of cocaine is a Class B felony. See T.C.A. §§ 39-17-408(b)(2), -417(c)(1) (2007).

In this case, the evidence supports the guilty verdict. Fleming essentially argues that the State's witnesses were not credible and that the jury should have believed his account of how Newman obtained the cocaine. He asserts, "Newman's alternative version of the facts . . . was not corroborated by anyone with a direct eyewitness view of the alleged transfer." As stated above, questions regarding the credibility of witnesses are left to the jury, and we will not override its findings. Odom, 928 S.W.2d at 23. Through the guilty verdict, the jury rejected Fleming's claim that Newman abruptly stole the cocaine. Newman testified that he spoke to Fleming at a gas station, and Fleming offered to sell him fifty dollars worth of cocaine. This testimony was corroborated by Samantha and Director Thompson. Newman said Director Thompson told him to make the purchase and handed him fifty dollars. Newman testified that he gave the money to Fleming and received a bag of cocaine in exchange. Agent Katherine testified that the bag contained 0.55 grams of cocaine with a standard deviation of 0.03 grams. Based on the foregoing evidence, a rational jury could have found that Fleming knowingly delivered more than 0.5 grams of cocaine. Fleming is not entitled to relief on this issue.

**II. Cross-Examination of State's Witness**. Fleming claims the trial court abused its discretion by restricting his cross-examination of Newman. He argues that he should have been allowed to question Newman about how much he was paid for all of his work as a confidential informant. Fleming also contends he had a right to inquire about Newman's potential sentence for several offenses. These offenses were allegedly being investigated when Newman worked as an undercover agent. Fleming claims these errors were not harmless because Newman was the State's key witness. In response, the State argues that this issue is waived because Fleming did not make an offer of proof. Additionally, it contends the trial court did not unduly restrict the cross-examination of Newman and that any potential error was harmless.

The right to question a witness about possible bias is a fundamental right. State v. Sayles, 49 S.W.3d 275, 279 (Tenn. 2001) (citing Davis v. State, 212 S.W.2d 374, 375 (Tenn. 1948)). It encompasses the right to inquire about "any promises of leniency, promises to help the witness, or any other favorable treatment offered to the witness." Id. (citing State v. Smith, 893 S.W.2d 908, 924 (Tenn. 1994) and State v. Spurlock, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993)). An undue restriction on this fundamental right violates the Confrontation Clause of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Tennessee Constitution. Id. (citations omitted). The Tennessee Supreme Court has stated:

> [A] criminal defendant states a violation of the [federal] Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, thereby exposing to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witnesses.

State v. Black, 815 S.W.2d 166, 177 (Tenn. 1991) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S. Ct. 1431, 1436 (1986)). The trial court is given discretion to decide whether the examination of a witness has been unduly restricted. Sayles, 49 S.W.3d at 279 (citing Davis, 212 S.W.2d at 375). Its decisions will not be disturbed absent an abuse of discretion. Id.

A violation of the defendant's right to confrontation is subject to harmless error analysis. Momon v. State, 18 S.W.3d 152, 167 (Tenn. 2000). The State has the burden of proving that the violation was harmless beyond a reasonable doubt. Id. In deciding what constitutes harmless error, the Tennessee Supreme Court referred to the following passage from Van Arsdall:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the

> witness on material points, the extent of cross-examination
> otherwise permitted, and, of course, the overall strength of the
> prosecution's case.

Sayles, 49 S.W.3d at 279 (quoting Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438).

We will first address the State's claim that this issue is waived because Fleming failed to make offers of proof. The purpose of an offer of proof is to enable the appellate court to determine if the trial court's exclusion of the evidence constituted reversible error. Dossett v. City of Kingsport, 258 S.W.3d 139, 145 (Tenn. Ct. App. 2007). Rule 103(a)(2) of the Tennessee Rules of Evidence provides:

> Error may not be predicated upon a ruling which admits or excludes evidence
> unless a substantial right of the party is affected, and
>
> (2) Offer of Proof. In case the ruling is one excluding evidence, the substance
> of the evidence and the specific evidentiary basis supporting admission were
> made known to the court by offer or were apparent from the context.

This rule requires that an offer of proof be made unless the excluded evidence and the evidence supporting its admission were apparent under the circumstances. It is well-established that the failure to comply with Rule 103(a)(2) results in a waiver of the issue. See State v. Hall, 958 S.W.2d 679, 691 n. 10 (Tenn.1997); Rutherford v. Rutherford, 971 S.W.2d 955, 956 (Tenn. App. 1997).

Fleming's first claim is that he should have been allowed to question Newman about how much he was paid for all of his work as a confidential informant. He asserts that Newman's total compensation would show that he was financially motivated to continue working as an informant. The State argues that an offer of proof was needed because no testimony was presented regarding the total amount of Newman's compensation. Ordinarily, we would agree with the State that an offer of proof was appropriate. However, in viewing the transcript, it is clear that the exclusion of testimony about Newman's total compensation was error.

Under the factors set forth in Van Arsdall, we conclude that the trial court's error in restricting the cross-examination of Newman was harmless. We acknowledge that Newman was an important witness for the State. However, his testimony was corroborated by two other witnesses. Samantha and Director Thompson testified that they were in the vehicle with Newman when he arranged to purchase cocaine from Fleming. Director Thompson heard the events leading up to the purchase. He directed Newman to make the purchase and

provided Newman with the money. Director Thompson further testified that no one was in the vehicle with Fleming when Newman made the purchase. Director Thompson said Newman walked up to the passenger's window of Fleming's vehicle and immediately returned with a bag of cocaine. Given the testimony of Samantha and Director Thompson, Newman's testimony was cumulative. Moreover, the cross-examination sufficiently established Newman's potential bias because Newman admitted that (1) his four-year probationary sentence for seven indictments was "a pretty good deal"; and (2) he was paid for his work as a confidential informant and his in-court testimony. Accordingly, any error in limiting the cross-examination was harmless.

Fleming's second claim is that he should have been allowed to question Newman about the maximum sentence he could have received for several offenses. The record contains limited information about these convictions. Investigator Robbins testified that Newman was under investigation for several offenses at the time he served as a confidential informant. On direct examination, Newman said he pled guilty to eleven offenses in 2009. He stated that he entered a "blind plea," in which the trial court sentenced him to probation. Newman denied receiving any leniency with regards to sentencing. On cross-examination, defense counsel asked Newman whether he was aware that he could have been sentenced to thirty-eight years. The State objected, arguing that the possibility of a maximum sentence was too remote and that the jury might be mislead. The trial court sustained the objection without comment.

In viewing the trial transcript, we are able to review this issue despite the absence of an offer of proof. We hold that the trial court did not unduly restrict Fleming's right to cross-examine Newman. Fleming argues that this case is comparable to State v. Rice, 184 S.W.3d 646 (Tenn. 2006), in which a State's witnesses pled guilty to a felony several months before trial. Id. at 669. The witness received a reduced sentence of six years on community corrections. Id. The sentencing range for the offense was eight to twelve years. Id. The trial court did not permit defense counsel to question the witness about whether he received a favorable plea deal in exchange for his testimony. Id. at 670. On appeal, the State conceded that defense counsel should have been allowed to question the witness about possible bias. Id. The Tennessee Supreme Court ultimately denied the defendant relief because it concluded that the trial court's error was harmless. Id. at 671. Rice is clearly distinguishable from the present case. Here, the trial court did not prohibit defense counsel from questioning Newman about whether he received a favorable sentence. The trial court refused to allow defense counsel to ask about the maximum sentence for Newman's convictions, based on the potential for consecutive sentencing. This finding alone did not amount to a violation of Fleming's right to confrontation. Furthermore, any error on the part of the trial court was harmless. Accordingly, Fleming is not entitled to relief on this issue.

**III. Closing Argument**. Fleming claims the prosecutor committed misconduct in its closing argument by commenting on Fleming's credibility. He contends the prosecutor improperly argued that Fleming had an incentive to create a "cock and bull story" in order to stay out of jail. Fleming claims the misconduct was not harmless because his credibility was a central issue in this case. The State denies that the prosecutor asserted a personal opinion about Fleming's credibility. It claims the prosecutor made the argument in response to defense counsel's suggestion that Newman and Samantha had an incentive to lie. The State asserts that the prosecutor "was pointing out that the defendant had just as much of an incentive to twist the facts of the crime." The State also argues that any potential error was harmless.

Fleming claims the following statements from the prosecutor were improper:

> And I do agree with [defense counsel] when he suggests to you that something for your consideration is that people might lie to keep out of jail. Well, who does that apply to? It doesn't apply to [Director] Thompson. He's going home today regardless of what you do. It doesn't apply to Sean Newman or Samantha Newman because they're going home today regardless of what you do. Who does it apply to? Who has the incentive to try to get you to believe their cock and bull story?

Defense counsel objected to this argument at trial. The trial court overruled the objection.

The courts of this state have routinely noted that "closing argument is a valuable privilege that should not be unduly restricted." State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001). The trial court has substantial discretion in controlling the course of arguments and will not be reversed unless there is an abuse of that discretion. Id. (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). In addition, prosecutorial misconduct does not constitute reversible error absent a showing that it has affected the outcome of the trial to the prejudice of the defendant. Id. (citing State v. Chalmers, 28 S.W.3d 913, 917 (Tenn. 2000)). However, an attorney's comments during closing argument "must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried." State v. Gann, 251 S.W.3d 446, 459 (Tenn. Crim. App. 2007) (citing State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978)). In order to be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996).

This court must consider the following factors when determining whether the argument of the prosecutor was so inflammatory or improper to negatively affect the verdict:

(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper arguments; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case. Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

As an initial matter, we acknowledge the prosecutor's obligation not to give his or her personal opinion about the truth of Fleming's testimony. See State v. Henley, 774 S.W.2d 908, 911 (Tenn. 1989); State v. Goltz, 111 S.W. 3d 1, 6 (Tenn. Crim. App. 2003). Here, during rebuttal, the prosecutor agreed with defense counsel's suggestion "that people might lie in order to stay out of jail" and urged the jury to evaluate which witnesses had the incentive "to try to get you to believe their cock and bull story." The prosecutor then argued that the State's witnesses were going home regardless of the outcome of the trial. In our view, this remark was in direct response to defense counsel's attack on the State's witnesses' credibility and, under the above law, was not improper. The Defendant is not entitled to relief on this issue.

**IV. Sentencing**. Fleming claims the trial court violated his right to a jury trial by sentencing him as a career offender. He argues that a jury needed to decide whether he qualified as a career offender based on his prior felony convictions. Fleming acknowledges that his argument is adverse to the Tennessee Supreme Court's decision in State v. Gomez, 239 S.W.3d 733, 740 (Tenn. 2007), which concluded that the trial court could enhance a sentence based on the defendant's criminal record. Nonetheless, he asks this court to reverse his convictions and grant him a new trial. We find no merit to Fleming's constitutional claim. See Clyde Smith v. State, No. M2007-00419-CCA-R3-PC, 2008 WL 80583, at *1 (Tenn. Crim. App., at Nashville, Jan. 3, 2008); State v. Marvin Wilkerson, No. E2006-01743-CCA-R3-CD, 2007 WL 2917785, at *4 (Tenn. Crim. App., at Knoxville, Oct. 9, 2007). In viewing the record, the trial court correctly sentenced Fleming as a career offender based on four Class B felonies. See T.C.A. § 40-35-108(a)(2) (2007) [judgment forms in III, Ex. A and C]. Fleming is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-11-